☑ FILED                    ____ RECEIVED
____ ENTERED               ____ SERVED ON
          COUNSEL/PARTIES OF RECORD

MAR - 8 2016

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

Joseph Eugene Piovo
1853 Indian Bend Drive
Henderson, Nevada 89074
702-897-2602
viceroyuncci@gmail.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| U.S. BANK NA, SUCCESSOR TRUSTEE TO BANK OF AMERICA, NA, SUCCESSOR IN INTEREST TO LASALLE BANK, NA, ON BEHALF OF THE REGISTERED HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2006-HE8, its successors and/or assigns,<br><br>                         Plaintiffs,<br><br>vs.<br><br>ANTONIETA TOVAR-GUZMAN, ROBERT J. STONE SR., and DOE OCCUPANTS 1 through X, inclusive<br><br>                         Defendants. | Case No. 2:16-cv-00445-MMD-CWH<br><br>**COUNTERCLAIM, CROSS-CLAIM AND THIRD PARTY COMPLAINT FOR FEDERAL CIVIL RIGHTS VIOLATIONS OF CIVIL RIGHTS ACT OF 1866** |
| Joseph Eugene Piovo, individually and as a Sole Beneficiary of Vice Roy United Nations Credit and Commerce International Blind Trust<br>1853 Indian Bend Drive<br>Henderson, Nevada 89074<br>APN:178-17-911-009<br>               Counterclaim Plaintiff<br><br>vs.<br><br>U.S. BANK NA, SUCCESSOR TRUSTEE TO BANK OF AMERICA, NA, SUCCESSOR IN INTEREST TO LASALLE BANK, NA, ON BEHALF OF THE REGISTERED HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2006-HE8, its successors and/or assigns,<br>               Counterclaim Defendant | |

1

1                   vs.

2   ANTONIETA TOVAR-GUZMAN;         )
   ROBERT STONE a/k/a ROBERT STONE;  )
3              Cross-Claim Defendants  )
                              )
4                  vs.            )
                              )
5   RONALD   A.   COLQUITT;   individually   and )
6   severally;                          )
   MICHELLE WILSON; individually and severally; )
7   SHAUNA S. BRENNAN, individually and    )
   severally;                          )
8   CBSK FINANCIAL GROUP, INC.;       )
   CHICAGO TITLE;                )
9   MORTGAGE   ELECTRONIC   REGISTRATION )
10  SYSTEMS, INC.; A/K/A MERS;         )
   MERSCORP HOLDINGS, INC.; A/K/A    )
11  MERSCORP, INC.;                )
   ALDRIDGE PITE, LLP;            )
12  REBECCA P. KERN, individually and severally; )
13                              )
14  Does 1-100 inclusive;           )
              Third Party Defendants   )
15                              )

16

17

18       Counterclaim, Cross-Claim and Third Party Plaintiff, Joseph Eugene Piovo, (hereinafter

19  "Joseph Eugene Piovo", "Piovo" or "Plaintiff") Golden Age Senior Citizen complains against all

20  named and unnamed parties hereto and alleges as follows:

21   **STANDARD OF REVIEW FOR UNREPRESENTED LITIGANT'S PLEADINGS**

22       Piovo's pleadings are requested to be construed by "less stringent standards". See *Haines*

23  *v. Kerner*, 404 U.S. 519-20, (1972).   Unrepresented litigant should be given a reasonable

24  opportunity to remedy defects in his [or her] pleadings if the factual allegations are close to

25  stating a claim for relief. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Accordingly

26  such pleadings should be held to a less stringent standard than those drafted by licensed,

27

28  practicing attorneys. Implicit in the right of self representation is an obligation on the part of any

court to make reasonable allowances to protect *unrepresented* litigants from inadvertent forfeiture of important Rights because of any lack of formal legal training. See Traguth v. Zuck, 710 F.2d 90, 95 (2nd Cir. 1983); Hoffman v. U.S., 244 F.2d 378, 379 (9th Cir. 1957); Darr v. Burford, 339 U.S. 200 (1950).

In Puckett v. Cox , it was held that a unrepresented litigant's complaint requires a less stringent reading than one drafted by a lawyer *(456* F2d 233 (1972 Sixth Circuit USCA) said Justice Black in Conley v. Gibson . 355 U.S. 41 at 48(1957) "The Federal Rules rejects the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." According to rule 8(f) F.R.C.P. all pleadings shall be construed to do substantial justice. The Court also cited Rule 8(f) F.R.C.P., which holds that all pleadings shall be construed to do substantial justice.'

## **NATURE OF THE ACTION**

### **CIVIL RIGHTS CONSPIRACY: DEPRIVATION OF CIVIL RIGHTS**

### **CIVIL RIGHTS ACT OF 1866, 14 STAT. 27 (A 1868 CONSTITUTIONALITY)**

Piovo's Complaint is based on the foremost importance of the Assessor's Parcel Number (APN). The APN is the only legitimate judiciary notice and a Claim of Right Entitlement Identifier to Property Rights of Citizens. Hence, the APN Identifier is the underlying indisputable non controversial fact as to whether or not a Party has a Property Rights of Citizens benefit under Civil Rights Property Rights of Citizens; is whether that Party's name appears on the APN Documents, which indisputably without controversy entitles the Titled Party to the Civil Rights Property Rights of Citizens benefit. In order to determine whether a Party is entitled to a Civil Rights Property Rights of Citizens benefit, courts generally consider the terms under which the

government has offered the benefit.

On or about March 9, 2006 to present Joseph Eugene Piovo's Property Rights of Citizens are unlawfully deprived by Civil Rights Conspiracy Coconspirators named and unnamed herein with the intent to and in furtherance thereof by concert of action of two or more Joint Interest Principals Coconspirators cause Piovo to part with money and property by admitted under oath conspiracy and theft, which egregiously placed Piovo against his will in harm's way by way of theft whereas the Anti Civil Rights Joint Interest Principals Coconspirators the known and unknown defendants stealing of Piovo's property identified as Assessor's Parcel Number 178-17-911-009 (hereinafter "APN") whereas equal protection under the law automatically causes the deprivation of Piovo's free flowing Civil Rights whereby Piovo is afforded equal protection under the laws of the United States in particular the violations of Civil Rights Act of 1866 14 Stat. 27 (1866). The deprivation of and encroachment upon Piovo's indissoluble Civil Rights whereas Equal Protection under the law and its *oneness intent* link each defendants' act(s) and laws to one another and become inseparable by their indisputable least common denominator, Equal Protection Under the Law, where defendants acts by their nature and scope and through defendants' sworn under oath statements admitting to theft of Piovo's property and by defendants' intentional conspiratorial misrepresentations and fraud as well as fraud upon the courts of the State of Nevada and Federal court within the State of Nevada, are a continuous deprivation and encroachment upon Piovo's Civil Rights and Equal Protection Under The Law which are afforded to Joseph Eugene Piovo.

The Joint Interest Principals Civil Rights Conspiracy Coconspirators have engaged then and continue to engage now through their concert of action and their knowing, willful and wrongful intent agreement to steal Piovo's *group of rights* inhering in the Citizen's Piovo relations

to the physical thing, as the right to possess, use and dispose of his property whereas with full intent to and in furtherance thereof the recent filing of the fraudulent Unlawful Detainer action in the Henderson Justice Court which included an attempt to forcefully remove Piovo from his property on March 2, 2016.

On June 4, 2009, Gregory A. Brower, The U.S. Attorney for the District of Nevada through the Assistant U.S. Attorney Jeffrey T. Toa filed a criminal complaint against the herein defendant ROBERT STONE (hereinafter "Stone" or "Robert Stone") case 2:09-cr-00216-jcm-pal violation: 18 U.S.C. Section 371 violations and the same crimes Stone committed against other homeowners for which he was prosecuted and is serving probation time.  Stone and other defendants violated, deprived and encroached then and continue to violate, deprive and encroach now upon Piovo's Civil Rights Act of 1866 14 Stat. 27 (1866). All Joint Interest Principals Coconspirators Civil Rights Conspiracy by concert of action did knowingly and willfully combine, conspire, and agree with others known and unknown to Piovo, deprive Piovo the proper Citizen, of his Civil Rights Act of 1866 14 Stat. 27 (1866).

On or about December 2, 2015, Plaintiff U.S. BANK NA, SUCCESSOR TRUSTEE TO BANK OF AMERICA, NA, SUCCESSOR IN INTEREST TO LASALLE BANK, NA, ON BEHALF OF THE REGISTERED HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2006-HE8, its successors and/or assigns (hereinafter (U.S. Bank") filed complaint for EVICTION in the HENDERSON JUSTICE COURT, Case Number 15CH003295, which was removed to this court on March 2, 2016.

U.S. Bank did knowingly and willfully combine, conspire, and agree with others known and unknown to Piovo to continue to defraud Piovo before and now defraud Piovo and the court

5

in Henderson by intentionally naming Piovo as DOE OCCUPANT where in fact U.S. Bank knew at all times that Piovo is an indispensible party who is in active litigation against U.S. Bank. U.S. Bank intentionally failed to serve Piovo with the summons and complaint. On January 4, 2016, U.S. Bank once again by fraudulent means obtained an ORDER FOR SERVICE BY PUBLICATION, fraudulently claiming that named defendants (Robert J. Stone Sr.  and Tovar-Guzman) in the unlawful detainer action must be served by publication as their whereabouts are unknown to U.S. Bank, where in fact U.S. Bank at all times knew that Tovar-Guzman is a resident of California and is represented by a co defendant Shauna Brennan and U.S. Bank at all times knew that Stone resides in the state of Utah and serving probation time there, U.S. Bank at all times knew their addresses and that neither Robert J. Stone Sr. nor Tovar-Guzman are occupants of Piovo's property, U.S. Bank at al times knew that Piovo is the lawful owner and occupant of the property subject of this litigation. Once again the order for publication was never served by U.S. Bank upon Piovo, Piovo is unaware when such publication took place and even if it did it would not constitute proper service as U.S. Bank is aware of Piovo and knows where Piovo is. U.S. Bank and Piovo are in active litigation for the past 8 years and at least 3 years in the U.S. District court for the district of Nevada where Piovo as Plaintiff names U.S. Bank, ANTONIETA TOVAR-GUZMAN and ROBERT STONE (as oppose to ROBERT J. STONE SR. who is unknown to Piovo and is a fictitious party) inter alia are named defendants, the case is now in the 9th Circuit court of Appeals. Case No. 15-15650 captioned Joseph Eugene Piovo v. Robert Stone.

Once a "JOHN DOE" defendant has been identified, the court can consider that defendant's citizenship. See *Curry*, 462 F.3d at 541; *Doleac*, 264 F.3d at 476 n5.

The Joint Interest Principals Coconspirators stole Piovo's Civil Rights Identification Document(s) and Information Assessor Parcel Number (APN) with the intent to transfer both the Title and Ownership of Joseph Eugene Piovo's Real Property, as is set out in Plain English within the body of this Complaint as to what the Civil Rights Conspiracy Harm actually is, because a lawful transfer to Joseph Eugene Plaintiff's APN Civil Rights Identification Document(s) and Information shows the name of Vice Roy United Nations Credit and Commerce International Blind Trust (hereinafter "Vice Roy Blind Trust") of which Piovo as the sole Beneficiary and Grantor is the lawful and rightful Real Property Holder, to the contrary, in this Case in Chief Piovo's Civil Rights APN Identification Document(s) and Information is stolen and fraudulently transferred from Piovo's over to at least one of the Joint Principal Coconspirators herein, all Joint Interest Principals Coconspirators did knowingly and willfully by means of false and fraudulent pretenses, representations and misrepresentation, renders Beneficiary Piovo's Civil Rights Identification Document(s) *Quintessential* and *Substantial* Anti Civil Rights being the *Essential Element* and the object of the Civil Rights Conspiracy whereas the named and unnamed Coconspirators use to place Piovo, the victim, in harm's way and at a material disadvantage, for lack thereof his, inter alia, Civil Rights Guarantee of equal protection under the federal law.

The Civil Rights Conspiracy Coconspirators by concert of action did knowingly and willfully combine, conspire, and agree with others known and unknown to Piovo to commit Anti Civil Rights Conspiracy Violations to steal Piovo's Civil Rights Identification Document(s) and Information, in that the Civil Rights Conspiracy Coconspirators herein knowingly and willfully combine, conspire, and agree with others to join in the *agreement to commit the Civil Rights Conspiracy harm* to Vice Roy Blind Trust and its sole Beneficiary Piovo, whereas the Civil Rights Conspiracy includes Direct Endorsement Lenders named herein, Chicago Title, U.S. Bank

and other Joint Interest Principals influenced and led premeditated diabolical Anti Civil Rights scheme and artifice with the intent to wrongfully deprive Piovo of his free flow of Civil Rights Act of 1866 14 Stat. 27 (1866). The Civil Rights Act of 1866, 14 Stat. 27-30 enacted on April 9, 1866, was the first United States Federal Law to identify, describe, and define US citizenship and affirmed that all citizens were equally protected under and by the law. After the Civil Rights Act of 1866 had been enacted into law members of Congress voted for the Fourteenth Amendment in order to eliminate doubts about the constitutionality of the Civil Rights Act of 1866.

Substantial Abilities of Federal Subject Matter Jurisdiction circumstantially stated in substance and in part in their own words contained within the context and content within the body of sworn statements made by coconspirators, Sworn Affidavits of Truths, that in substance and in part pertains to acts constituting federal Civil Rights violations.

The complaint is not a single claim against all Defendants but a ***Group of Rights*** claims against each individual known at this time defendant. See, *United States v. General Motors Corp* 323 U.S. 378 (1945), the Supreme Court defined "***property***" as the ***Group of Rights*** inhering in the citizen's relations to the physical thing, are substantial rights, as the right to possess, use and dispose of it; it also deals with what lawyers term the individual's "interest" in the thing in question; *The constitutional provision that is addressed to every sort of interest the citizen may possess;* until the object of the conspiracy is attempted and or accomplished, all Coconspirators commit the OVERT ACT. Piovo clearly states a claim upon which relief may be granted.

Plaintiff seeks relief from this Court based upon his clearly stated and well supported claim of violations under Deprivation of Civil Rights Civil Rights Act of 1866, 14 Stat. 27 (A 1868 Constitutionality).

8

# THE PARTIES

1.      Counterclaim, Cross-Claim and Third Party Plaintiff, Joseph Eugene Piovo (hereinafter, "Joseph Eugene Piovo", "Plaintiff" or "Piovo"), is a Golden Age senior Citizen, the sole Beneficiary of Vice Roy United Nations Credit and Commerce International Blind Trust at all times relevant to this complaint has been a resident in real property located at 1853 Indian Bend Drive, Henderson, Nevada 89074, APN:178-17-911-009 with the legal description of:

> Parcel (1)
> Lot 9 in Block h A" of Amended Plat of Legacy Highlands, as shown by map thereof on file in Book 48 of Plats, Page 18 in the Office of the County Recorder of Clark County, Nevada,
> Parcel (2);
> A non-exclusive right of ingress, egress and enjoyment in, to and over those areas depicted as private drives, p.u.e. and common areas on the above described plat and as shown on the amended Official Plat of Lots 28 through 39 and 52 through 61, Block B of Legacy Highlands, as shown by map thereof on File in Book 50 of Plats, Page 58 and the amended Official Plat of Lots 16 through 19, Block A of Legacy Highlands, as shown by map thereof on File in Book 53 of Plats, page 13, in the Office of the County Recorder of Clark County, Nevada.
> Assessor's Parcel No: 178-17·811-009.

Plaintiff is a lawful owner of the property. Plaintiff is the "Grantee" on a Grant Deed recorded on November 14, 2005, under Instrument No. 20051114-0005356, referencing APN 178-17-811-009, with the Clark County Recorder's Office. The Grant Deed is incorporated herewith as **Exhibit A**. Piovo as an individual and as Beneficiary of Vice Roy Blind Trust and as such is a Real Party in Interest pursuant to Rule 17(a). Piovo is also possessor of the property, *when the possessor of property other than the owner sues for an invasion of the possessory interest he is the real party in interest*. Normally any beneficiary whose rights are threatened has standing to sue. Restatement 2d of Trusts §§ 197, 198, 199, 200 (1959); Unif. Trust Code § 1001, comment (2006); The definition of beneficiary, in this context, includes anyone with a vested or

9

contingent right to present or future distributions, including a reversionary interest. Restatement 3d of Trusts § 82 (2007); Piovo is a Settlor, a Settlor holding a power of revocation and, generally, the donee of a power of appointment are also beneficiaries. Restatement 3d of Trusts §§ 48, 49, 74 (2007); Unif. Trust Code § 103(3)(B) (2006); Halbach, supra, at 728-730. Piovo is the Settlor of the Trust and as such under the Trust Agreement can collapse the Trust at any time and revert the property to himself. Piovo is deprived of that right by the defendants in concert of action in violation of Piovo's Civil Rights.

2.      Civil Rights Conspiracy Cross-Claim Defendant, ANTONIETA TOVAR-GUZMAN, (hereinafter "Guzman" or "Tovar-Guzman"), a Civil Rights Coconspirator, deprives Plaintiff's Federal Civil Rights which grants Plaintiff's claim for Federal jurisdiction upon which relief can be granted, Tovar-Guzman acts as a straw buyer and participates together with Coconspirator Robert Stone, Coconspirator Ronald Colquitt and others known and unknown Civil Rights Conspiracy coconspirators conspire to deprive Plaintiff of his Civil Rights. Last known address for Antonieta Tovar-Guzman is 1211 S. Merrill, Corona, California 92882. Tovar-Guzman admits in her own *self incriminating* under oath sworn positive testimony an adjudicative fact, for which the record speaks… in Plain English, that she participates as a straw buyer for which receives $3,000.00 to defraud Piovo of his Federal Civil Rights.

3.      Civil Rights Conspiracy Cross-Claim Defendant, ROBERT STONE as oppose to an intentionally named, in an effort to commit fraud upon the court by U.S. Bank, a fictitious defendant ROBERT J. STONE, SR. named in the unlawful detainer complaint (hereinafter "Stone" or "Robert Stone") is a convicted felon, a coconspirator, who is charged and prosecuted by the United States Attorney for the District of Nevada for conspiracy to defraud under 18 U.S.C. §371 and 18 U.S.C. §1344. The object of the conspiracy is for Stone and others to obtain

money and property by fraudulently obtaining mortgages through straw buyers to purchase houses in Nevada. Robert Stone is directly involved in similar scheme for which he is convicted, Stone facilitates and perpetrates the purchase and sale of Plaintiff's property through a straw buyer and others known and unknown Civil Rights Conspiracy coconspirators conspire to deprive Plaintiff of his Civil Rights. Robert Stone official residence is 659 E. 660 North, Orem, UT 84091. Robert Stone violates Plaintiff's Federal Civil Rights which grants Plaintiff claim for Federal jurisdiction upon which relief can be granted. The second amended complaint will be served upon Stone at his currently known address at 659 E. 660 North, Orem, UT 84091. Stone's indictment is incorporated herewith as **Exhibit B**.

4.      Civil Rights Conspiracy Counterclaim Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST  TO BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CERTIFICATEHOLDERS OF BEAR STERNS ASSET BACKED SECURITIES I LLC, ASSET BACKED CERTIFICATES, SERIES 2006-HE8, its successors and/or assigns (hereinafter "U.S. Bank") acts as a "Kingpin" in a Civil Rights Conspiracy with sufficient intent to in furtherance thereof by concert of action of two or more Joint Interest Principals Cocoonspirators cause Piovo and Government-Insured Financial Enterprises to part with money involving any rights or obligations that arise from the Constitution and/or other federal law indissoluble links itself to (1) Joseph Eugene Piovo, (2) Civil Rights Act of 1866 14 Stat. 27 (1866). All such Civil Rights Conspiracy Coconspirators' related acts committed in the past present and in the future by the Civil Rights Conspiracy membership, and/or to be committed in the future by the past present and future membership all their related past present and future federal acts shall be deemed to arise under Federal Law Civil Rights Act

of 1866, 14 Stat. 27 (1866), <u>Federal Jurisdiction ONLY.</u> U.S. Bank together with other Civil Rights Conspiracy Coconspirators conspired to deprive Plaintiff of his Civil Rights conspiracy which resulted in theft of Plaintiff's APN in violation of Plaintiff's Civil Rights.

5.      On or about September 16, 2013, U.S. Bank was served with a Notice of Pendency of Action describing its own violations and the conspiracy by other Civil Rights Conspiracy coconspirators, Civil Rights Conspiracy member and coconspirator U.S. Bank and <u>their lawyers</u> failed to formally withdraw and continue to participate in the conspiracy and Plaintiff's Civil Rights violations with others known and unknown Civil Rights Conspiracy coconspirators conspire to deprive Plaintiff of his Civil Rights. U.S. Bank is a national banking association whose articles of association designate 425 Walnut Street, Cincinnati, OH 45202 as the location of its main office. U.S. Bank claims an interest in the Plaintiff's property.

6.      Civil Rights Conspiracy Third Party Defendant, RONALD A. COLQUITT, (hereinafter "Colquitt" or "Ronald Colquitt") a Civil Rights Conspiracy Coconspirator, an attorney in Henderson Nevada, Nevada Bar Number 4953, currently practicing law in the State of Nevada, violates Plaintiff's Federal Civil Rights which grants Plaintiff's claim for Federal jurisdiction upon which relief can be granted, Colquitt is directly involved in the scheme and  conspiracy between Stone, Guzman, Chicago Title and CBSK who is known as a "Direct Endorsement Lender",  and others known and unknown Civil Rights Conspiracy coconspirators conspire to deprive Plaintiff of his Civil Rights. Last known address for Ronald Colquitt is 321 S. Casino Center,Las  Vegas, NV 89101.

7.      Civil Rights Conspiracy Third Party Defendant, Michelle Wilson (hereinafter "Wilson" or "Michelle Wilson") is a real estate appraiser, a  coconspirator, violated Plaintiff's Federal Civil Rights which grants Plaintiff's claim for Federal jurisdiction upon which relief can be granted,

Wilson acts as Stone's agent, Wilson participated together with coconspirator Robert Stone, and coconspirator Ronald Colquitt and others known and unknown Civil Rights Conspiracy coconspirators conspire to deprive Plaintiff of his Civil Rights. Last known address for Michelle Wilson is 1320 Fairchild St. Las Vegas, NV 89110.

8.      Civil Rights Conspiracy Third Party Defendant, SHAUNA BRENNAN, (hereinafter "Brennan" or "Shauna Brennan") an attorney in Las Vegas Nevada, Nevada Bar Number 6235, violated Plaintiff's Federal Civil Rights which grants Plaintiff's claim for Federal jurisdiction upon which relief can be granted, Brennan is currently practicing law in the State of Nevada, is directly involved in the scheme and conspiracy to cover up acts of Guzman and places Plaintiff in fear through written *threat of a law suit* against Plaintiff.

9.      Civil Rights Conspiracy Third Party Defendant, CBSK FINANCIAL GROUP, INC. DBA AMERICAN HOME LOANS (hereinafter "CBSK") is a "Direct Endorsement Lender" violates Plaintiff's Civil Rights which grants Plaintiff's claim for Federal jurisdiction.

CBSK acts as a "Kingpin" in a Civil Rights Conspiracy with sufficient intent to in furtherance thereof by concert of action of two or more Joint Interest Principals Coconspirators cause Piovo and Government-Insured Financial Enterprises to part with money involving any rights or obligations that arise from the Constitution and/or other federal law indissoluble links itself to (1) Joseph Eugene Piovo, (2) Civil Rights Act of 1866 14 Stat. 27 (1866). All such Civil Rights Conspiracy Coconspirators' related acts committed in the past present and in the future by the Civil Rights Conspiracy membership, and/or to be committed in the future by the past present and future membership all their related past present and future federal acts shall be deemed to arise under Federal Law Civil Rights Act of 1866, 14 Stat. 27 (1866), Federal Jurisdiction ONLY. CBSK together with Civil Rights Conspiracy Coconspirator Chicago Title participated together

with Civil Rights Conspiracy Coc1spirators Guzman, Colquitt and others known and unknown

Civil Rights Conspiracy Cocopirators conspired to deprive Plaintiff of his Civil Rights.

CBSK as a mortgage lender was conducting residential mortgage lending and/or servicing of loans. CBSK approved the loan to a Civil Rights Conspiracy Coconspirator Guzman that resulted in the theft of Plaintiff's APN in violation of Plaintiff's Civil Rights. The last known corporate address for CBSK is 17991 Cowan, Irvine, CA 92614. No known Registered Agent exists for CBSK. California Secretary of State Website printout is incorporated herewith as **Exhibit C**. On October 9, 2007, Pursuant to Section 50319 of California Financial Code, Preston Dufauchard, California Corporations Commissioner issued an Order to CBSK to Discontinue Residential Mortgage Lending and/or Servicing Activities. The order is incorporated herewith as **Exhibit D.** And on November 5, 2007, California Corporations Commissioner issued an Order Summarily Revoking CBSK lending/servicing license. The order is incorporated herewith as **Exhibit E**. In addition Nevada Secretary of State permanently revoked CBSK as well. CBSK claims an interest in the Plaintiff's property through a recorded Deed of Trust given to CBSK by Tovar-Guzman. The recorded Deed of Trust is incorporated herewith as **Exhibit F**. The complaint will be served upon two known officers of CBSK, one CHARLES "BRENT" MCELWEE, President and CYNTHIA MCELWEE, Secretary residing at 26121 Calle Roberto, San Juan Capistrano, CA 92675-3059.

10.     Civil Rights Conspiracy Third Party Defendant, CHICAGO TITLE, (hereinafter "Chicago Title") a Coconspirator, violated Plaintiff's Federal Civil Rights which grants Plaintiff a claim for Federal jurisdiction. Chicago Title acts as another "Kingpin" in a Civil Rights Conspiracy with sufficient intent to in furtherance thereof by concert of action of two or more Joint Interest Principals Coconspirators cause Government-Insured Financial Enterprises to part with money

involving any rights or obligations that arise from the Constitution and/or other indissoluble federal law links itself to (1) Joseph Eugene Piovo, (2) Civil Rights Act of 1866 14 Stat. 27 (1866) to further the purpose to defraud Piovo of certain Substantial Civil Rights.

Chicago Title acts as a Substantial part of the Civil Rights Conspiracy with sufficient intent to further the purpose of the Interstate Conspiracy, Chicago Title participated together with Civil Rights Conspiracy coconspirators CBSK, Colquitt, Guzman and others known and unknown Civil Rights Conspiracy coconspirators conspire to deprive Plaintiff of his Civil Rights. Chicago Title conspiracy resulted in theft of Plaintiff's APN in violation of Plaintiff's Civil Rights. Chicago Title an Illinois corporation with its principal place of business located at 601 Riverside Ave. Jacksonville, FL 32204. Chicago Title Registered Agent is the CT Corporation System, located at 208 So. LaSalle St. Suite 814, Chicago, IL 60604.

11.    Civil Rights Conspiracy Third Party Defendant, Mortgage Electronic Registration System, Inc. ("MERS") a Coconspirator, violated Plaintiff's Federal Civil Rights which grants Plaintiff a claim for Federal jurisdiction. MERS acts as another "Kingpin" in a Civil Rights Conspiracy with sufficient intent to in furtherance thereof by concert of action of two or more Joint Interest Principals Coconspirators cause Government-Insured Financial Enterprises to part with money involving any rights or obligations that arise from the Constitution and/or other indissoluble federal law links itself to (1) Joseph Eugene Piovo, (2) Civil Rights Act of 1866 14 Stat. 27 (1866) to further the purpose to defraud Piovo of certain Substantial Civil Rights. MERS is a national registry that tracks the ownership and servicing rights of its members in residential mortgage loans. There are over 6,300 members of MERS. MERS is a wholly-owned subsidiary and a alter ego of defendant MERSCORP, Inc. MERS also is a Delaware corporation with its principal place of business located at 1818 Library Street, Suite 300, Reston, Virginia 20190. For

the purposes of this pleading, reference to MERS includes reference to MERSCORP, Inc., MERS registered agent is the Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

12.     Civil Rights Conspiracy Third Party Defendant, MERSCORP HOLDINGS, INC., a/k/a MERSCORP, Inc. ("MERSCORP") is an Alter Ego of MERS, MERSCORP, for the purposes of this pleading, reference to MERSCORP includes reference to MERS, through its alter ego MERS violated Plaintiff's Federal Civil Rights which grants Plaintiff a claim for Federal jurisdiction, acted with sufficient intent in furtherance thereof by concert of action of two or more Joint Interest Principals Coconspirators cause Government-Insured Financial Enterprises to part with money involving any rights or obligations that arise from the Constitution and/or other indissoluble federal law links itself to (1) Joseph Eugene Piovo, (2) Civil Rights Act of 1866 14 Stat. 27 (1866) to further the purpose to defraud Piovo of certain Substantial Civil Rights. MERSCORP acts in a Civil Rights Conspiracy with sufficient intent to further the purpose of Civil Rights Conspiracy MERSCORP participated together with other Civil Rights Conspiracy Coconspirators known and unknown to deprive Plaintiff of his Civil Rights. MERSCORP is a Delaware corporation with its principal place of business located in Vienna, Virginia. MERSCORP's registered agent is the Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

13.     Civil Rights Conspiracy Third Party Defendant ALDRIDGE PITE, LLP, (hereinafter "Aldridge Pite") a Coconspirator, violated Piovo's Federal Civil Rights by filing fraudulent detainer complaint in Henderson Justice Court together with Third Party Defendant U.S. Bank in a Civil Rights Conspiracy with sufficient intent to in furtherance thereof by concert of action of two or more Joint Interest Principals Coconspirators, which grants Piovo a claim for Federal

16

jurisdiction, cause Piovo to part with money and property by involving any rights or obligations that arise from the Constitution and/or other indissoluble federal law links itself to (1) Joseph Eugene Piovo, (2) Civil Rights Act of 1866 14 Stat. 27 (1866) to further the purpose to defraud Piovo of certain Substantial Civil Rights. Aldridge Pite, LLP is Georgia Limited Liability Partnership located at 3575 Piedmont Road, N.E., Suite 500, Atlanta, Georgia 30305, with a registered agent in Nevada The Corporation Trust Company Of Nevada at 701 S. Carson St Ste 200, Carson City, Nevada 89701. Aldridge Pite disguised the complaint as a controversy between an alleged landlord and tenant where no such relationship exists, and the actual controversy is regarding Piovo's Title rights under GRANT BARGAIN AND SALE DEED dated November 3, 2005, the conspiracy and theft of which in violation of Piovo's Civil Rights Act of 1866 grants United States District Court For The District Of Nevada original jurisdiction in this instant civil action.

14.    Civil Rights Conspiracy Third Party Defendant REBECCA P. KERN, (hereinafter "Kern") a Coconspirator, violated Plaintiff's Federal Civil Rights by filing fraudulent detainer complaint in Henderson Justice Court together with Third Party Defendant Aldridge Pite and Third Party Defendant U.S. Bank in a Civil Rights Conspiracy with sufficient intent in the course of and in furtherance thereof to advance the aim of the joint interest conspiracy against rights by concert of action of two or more Joint Interest Principals Coconspirators, which grants Piovo a claim for Federal jurisdiction, cause Piovo to part with money and property by involving any rights or obligations that arise from the Constitution and/or other indissoluble federal law links itself to (1) Joseph Eugene Piovo, (2) Civil Rights Act of 1866 14 Stat. 27 (1866) to further the purpose to defraud Piovo of certain Substantial Civil Rights. Kern disguised the complaint as a controversy between an alleged landlord and tenant where no such relationship exists, and the

actual controversy is regarding Piovo's Title rights under GRANT BARGAIN AND SALE DEED dated November 3, 2005, the conspiracy and theft of which in violation of Piovo's Civil Rights Act of 1866 grants United States District Court For The District Of Nevada original jurisdiction in this instant civil action.

15.     Whenever an act or omission of a corporation or business entity is alleged in this Complaint, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acts or omits to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope and or abuse of their duties, that the act or omission is authorized by corporate managerial officers or directors, and that the act or omission is ratified by the officers and directors of the corporation or business entity, where so reasonably stated, implied and/or inferred.

Any allegation about acts of any corporate or other business Civil Rights Conspiracy coconspirator means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they are acting within the actual or ostensible scope of or abuse of their authority where so reasonably stated, implied and/or inferred.

At all relevant times, Civil Rights Conspiracy coconspirators commit the acts, cause or direct others to commit the acts, or permit others to commit the acts alleged in this complaint. At all relevant times, Civil Rights Conspiracy Coconspirators know or realize that they are engaging in or planning to engage in the violations of the laws, the laws of the United States, and Plaintiff's Civil Rights alleged in this Complaint.

Knowing or realizing that Civil Rights Conspiracy Coconspirators are engaging in or planning to engage in unlawful Civil Rights conspiracy, Civil Rights Conspiracy Coconspirators

nevertheless engage in and/or facilitate the commission of those unlawful acts. Civil Rights Conspiracy Coconspirators intend to and do engage in and/or encourage, facilitate, and/or assist in the commission of the unlawful acts, and thereby commit and/or aid and abet others in the unlawful Civil Rights conspiracy.

**JURISDICTION AND VENUE**

16.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331. Federal "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331, and is one which may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C. §1441(a) in that it arises under the basis of federal question jurisdiction.

17.     This Court has original jurisdiction pursuant to a ***positive law*** Civil Rights Act of 1866 14 Stat. 27 (1866). Removal is based on a claim "arising under" federal law, Civil Rights Act of 1866, 14 STAT. 27. Piovo has an unconditional right to intervene by a Federal statute; and pursuant to Fed. R. Civ. P. Rule 24(a)(2) has a claim and interest in the same property and transaction that is the subject of the instant action and have an obligation to protect his interest.

18.     This Court has personal jurisdiction over Civil Rights Conspiracy Defendant(s) and venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions and Civil Rights Conspiracy violations give rise to the Plaintiffs' claims occur, committing a acts inside Nevada or outside of Nevada causing injury within Nevada.

19.     Venue is also proper in this district under 28 U.S.C. §1441(a) because this district and division embrace the place where the removed action has been pending.

**PERTINENT LAW AND UNDISPUTED FACTS**

19

20.     The sequence of the Object of the Civil Rights Conspiracy as set out below in Plain

English, inter alia, is…

**Pertinent Law**

21.     Civil Rights Act of 1866 14 Stat. 27.

THIRTY-NINTH CONGRESS. Sess. I. Ch. 31. 1866.

CHAP. XXXI. — *An Act to protect all Persons in the United States in their Civil Rights, and furnish the Means of their Vindication.*

        "*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That all persons born in the United States and not subject to any foreign power, excluding Indians not taxed, are hereby declared to be citizens of the United States; and such citizens, of every race and color, without regard to any previous condition of slavery or involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall have the same right, in every State and Territory in the United States, to make and enforce contracts, to sue, be parties, and **give evidence, to inherit, purchase, lease, sell, hold, and convey real and personal property, and to full and equal benefit of all laws and proceedings for the security of person and property,** as is enjoyed by white citizens, and shall be subject to like punishment, pains, and penalties, and to none other, any law, statute, ordinance, regulation, or custom, to the contrary notwithstanding.

        Sec. 2. *And be it further enacted,* That any person who, under color of any law, statute, ordinance, regulation, or custom, shall subject, or cause to be subjected, any inhabitant of any State or Territory to the deprivation of any right secured or protected by this act, or to different punishment, pains, or penalties on account of such person having at any time been held in a condition of slavery or involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, or by reason of his color or race, than is prescribed for the punishment of white persons, shall be deemed guilty of a misdemeanor, and, on conviction, shall be punished by fine not exceeding one thousand dollars, or imprisonment not exceeding one year, or both, in the discretion of the court.

        SEC. 3. *And be it further enacted,* That the district courts of the United States, within their respective districts, shall have, exclusively of the courts of the several States, cognizance of all crimes and offences committed against the provisions of this act, and also, concurrently with the circuit courts of the United

20

States, of all causes, civil and criminal, affecting persons who are denied or cannot enforce in the courts or judicial tribunals of the State or locality where they may be any of the rights secured to them by the first section of this not; and if any suit or prosecution, civil or criminal, has been or shall be commenced in any State court, against any such person, for any cause whatsoever, or against any officer, civil or military, or other person, for any arrest or imprisonment, trespasses, or wrongs done or committed by virtue or under color of authority derived from this act or the act establishing a Bureau for the relief of Freedmen and Refugees, and all acts amendatory thereof, or for refusing to do any act upon the ground that it would be inconsistent with this act, such defendant shall have the right to remove such cause for trial to the proper district or circuit court in the manner prescribed by the "Act relating to habeas corpus and regulating judicial proceedings in certain cases," approved March three, eighteen hundred and sixty-three, and all acts amendatory thereof. **The jurisdiction in civil and criminal matters hereby conferred on the district and circuit courts of the United States shall be exercised and enforced in conformity with the laws of the United States**, so far as such laws are suitable to carry the same into effect; but in all cases where such laws are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offences against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of the cause, civil or criminal, is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern said courts in the trial and disposition of such cause, and, if of a criminal nature, in the infliction of punishment on the party found guilty.

SEC. 4. *And be it further enacted,***Th at the district attorneys, marshals, and deputy marshals of the United States, the commissioners appointed by the circuit and territorial courts of the United States, with powers of arresting, imprisoning, or bailing offenders against the laws of the United States, the officers and agents of the Freedmen's Bureau, and every other officer who may be specially empowered by the President of the United States, shall be,** _**and they are hereby, specially authorized and required, at the expense of the United States, to institute proceedings against all and every person who shall violate the provisions of this act,**_ **and cause him or them to be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States or territorial court as by this act has cognizance of the offence.** And with a view to affording reasonable protection to all persons in their constitutional rights of equality before the law, without distinction of race or color, or previous condition of slavery or involuntary

servitude, except as a punishment for crime, whereof the party shall have been duly convicted, and to the prompt discharge of the duties of this act, it shall be the duty of the circuit courts of the United States and the superior courts of the Territories of the United States, from time to time, to increase the number of commissioners, so as to afford a speedy and convenient means for the arrest and examination of persons charged with a violation of this act; and such commissioners are hereby authorized and required to exercise and discharge all the powers and duties conferred on them by this act, and the same duties with regard to offences created by this act, as they are authorized by law to exercise with regard to other offences against the laws of the United States.

SEC. 5. *And be it further enacted*, That it shall be the duty of all marshals and deputy marshals to obey and execute all warrants and precepts issued under the provisions of this act, when to them directed; and should any marshal or deputy marshal refuse to receive such warrant or other process when tendered, or to use all proper means diligently to execute the same, he shall, on conviction thereof, be fined in the sum of one thousand dollars, to the use of the person upon whom the accused is alleged to have committed the offence. And the better to enable the said commissioners to execute their duties faithfully and efficiently, in conformity with the Constitution of the United States and the requirements of this act, they are hereby authorized and empowered, within their counties respectively, to appoint, in writing, under their hands, any one or more suitable persons, from time to time, to execute all such warrants and other process as may be issued by them in the lawful performance of their respective duties; and the persons so appointed to execute any warrant or process as aforesaid shall have authority to summon and call to their aid the bystanders or posse comitatus of the proper county, or such portion of the land or naval forces of the United States, or of the militia, as may be necessary to the performance of the duty with which they are charged, and to insure a faithful observance of the clause of the Constitution which prohibits slavery, in conformity with the provisions of this act; and said warrants shall run and be executed by said officers anywhere in the State or Territory within which they are issued.

SEC. 6. *And be it further enacted*, That any person who shall knowingly and wilfully obstruct, hinder, or prevent any officer, or other person charged with the execution of any warrant or process issued under the provisions of this act, or any person or persons lawfully assisting him or them, from arresting any person for whose apprehension such warrant or process may have been issued, or shall rescue or attempt to rescue such person from the custody of the officer, other person or persons, or those lawfully assisting as aforesaid, when so arrested

pursuant to the authority herein given and declared, or shall aid, abet, or assist any person so arrested as aforesaid, directly or indirectly, to escape from the custody of the officer or other person legally authorized as aforesaid, or shall harbor or conceal any person for whose arrest a warrant or process shall have been issued as aforesaid, so as to prevent his discovery and arrest after notice or knowledge of the fact that a warrant has been issued for the apprehension of such person, shall, for either of said offences, be subject to a fine not exceeding one thousand dollars, and imprisonment not exceeding six months, by indictment and conviction before the district court of the United States for the district in which said offence may have been committed, or before the proper court of criminal jurisdiction, if committed within any one of the organized Territories of the United States.

SEC. 7. *And be it further enacted*, That the district attorneys, the marshals, their deputies, and the clerks of the said district and territorial courts shall be paid for their services the like fees as may be allowed to them for similar services in other cases ; and in all cases where the proceedings are before a commissioner, he shall be entitled to a fee of ten dollars in full for his services in each case, inclusive of all services incident to such arrest and examination. The person or persons authorized to execute the process to be issued by such commissioners for the arrest of offenders against the provisions of this act shall be entitled to a fee of five dollars for each person he or they may arrest and take before any such commissioner as aforesaid, with such other fees as may be deemed reasonable by such commissioner for such other additional services as may be necessarily performed by him or them, such as attending at the examination, keeping the prisoner in custody, and providing him with food and lodging during his detention, and until the final determination of such commissioner, and in general for performing such other duties as may be required in the premises; such fees to be made up in conformity with the fees usually charged by the officers of the courts of justice within the proper district or county, as near as may be practicable, and paid out of the Treasury of the United States on the certificate of the judge of the district within which the arrest is made, and to be recoverable from the defendant as part of the judgment in case of conviction.

SEC. 8. *And be it further enacted*, That whenever the President of the United States shall have reason to believe that offences have been or are likely to be committed against the provisions of this act within any judicial district, it shall be lawful for him, in his discretion, to direct the judge, marshal, and district attorney of such district to attend at such place within the district, and for such

23

time as he may designate, for the purpose of the more speedy arrest and trial of persons charged with a violation of this act; and it shall be the duty of every judge or other officer, when any such requisition shall be received by him, to attend at the place and for the time therein designated.

SEC. 9. *And be it further enacted,* That it shall be lawful for the President of the United States, or such person as he may empower for that purpose, to employ such part of the land or naval forces of the United States, or of the militia, as shall be necessary to prevent the violation and enforce the due execution of this act.

SEC. 10. *And be it further enacted,* That upon all questions of law arising in any cause under the provisions of this act a final appeal may be taken to the Supreme Court of the United States." [emphases added]

22.     On November 14, 2005 a Grant Bargain and Sale Deed is recorded wherein Robert Stone transfers the subject property for due consideration to VICE ROY UNITED NATIONS CREDIT AND COMMERCE INTERNATIONAL BLIND TRUST. The consideration for this transfer is paid and is shown on the Grant Bargain and Sale Deed. See Exhibit A.

**Undisputed Facts**

The Object of the Conspiracy is to deprive Joseph Eugene Piovo of Civil Rights

23.     On or about May 9, 2006 unbeknownst to Piovo and without Piovo's authorization, knowledge or consent the Civil Rights Conspiracy Coconspirators did knowingly and willfully join in a wrongful agreement to stop the free flow of Piovo's Civil Rights Identification Document(s) and Information the quintessential element thereof known as the APN, is what egregiously simultaneous to moment in time when the Civil Rights Conspiracy with sufficient intent in the course of and in furtherance thereof to advance the aim of the joint interest conspiracy against rights by concert of action coconspirators herein did knowingly and willfully transfer the stolen Piovo's Civil Rights Identification Document(s) and Information APN did

knowingly and willfully join in the agreement to in furtherance thereof transfer Title and Ownership of Piovo's Real Property by false identification document knowing that such document was produced by means of false and fraudulent pretenses, and representations without lawful authority making the transfer void ab initio; the knowingly fraudulent Plaintiff's APN Civil Rights Identification Document(s) and Information APN theft did inherently wrongfully stole from Piovo his quintessential element that stops his free flowing Civil Rights, by the Civil Rights Conspiracy concert of action that unlawfully stops Piovo's free flow of Civil Rights and in particular Civil Rights Act of 1866 14 Stat. 27 (1866) to Piovo, did subject him to almost fatal heart attack in his then lawyer's office and having been told by the doctors that Piovo *has only three hours to live* as a result of the transfer and ensuing legal battle and threats of lawsuits as well as continuous cover up through over eight years of protracted litigation, and now another fraudulent act perpetrated by coconspirators by filing fraudulent unlawful detainer complaint in Henderson Justice Court whereby, coconspirators conspired to and did take action to forcefully remove Piovo from his property.

24.    Piovo offers into evidence positive direct evidence in form of sworn under oath testimonies in compliance with the <u>Federal Rules of Evidence Rule 104(b)</u>, whereby the relevancy of the evidence is conditioned upon the existence of a fact, and in compliance with the Federal Rules of Evidence Rule 801(c) to prove the truth of the matter asserted therein. The relevancy of the evidence is conditioned upon the existence of a fact, a *self incriminating* sworn positive testimony <u>an adjudicative fact</u>, for which the record speaks... in Plain English: Whereby within both the context and content thereof: the Unscrupulous Officer of the Court Attorney Ronald A. Colquitt willfully admits to and sets out in Plain English self incriminating Civil Rights, and he under oath without ambiguities incriminates the Joint Interest Principals Direct

25

Endorsement Lenders, Chicago Title, Robert Stone, himself, Ronald A. Colquitt, along with other Civil Rights Coconspirators by pointing out his and their voluntary willful joining in of the Unlawful Civil Rights Conspiracy with an inherently wrongful complete blatant disregards for the laws of the United States premeditated decision in joining in the Callous Agreement did knowingly, and willfully combine, conspire, and agree along with the Joint Interest Principals Coconspirators to deprive Piovo of his free flowing Civil Rights.

25.     The instant Civil Rights Conspiracy was formed on or about May 09, 2006 by a now convicted felon and a coconspirator Robert Stone who's address on May 09, 2006 is known to be 1416 Belmont Park Road, Oceanside, CA 92057, and now is known to be 659 E. 660 North, Orem, UT 84091, who is charged and prosecuted by the United States Attorney for the District of Nevada Case 2:09-**cr**-00216-JCM-PAL for conspiracy to defraud under 18 U.S.C. §371 and 18 U.S.C. §1344. The object of the conspiracy is for Stone and others to obtain money and property by fraudulently obtaining mortgages through straw buyers to purchase houses in Nevada and other states. The instant conspiracy following similar act whereby all Joint Interest Principals Coconspirators with a callous indifference to suffering cold-blooded and indurate to Civil Rights Conspiracy Laws and Laws of the United States, by concert of action the Civil Rights Conspiracy severely and jointly all Joint Interest Principals coconspirators did knowingly and willfully combine, conspire, and agree to devise a scheme and artifice to deprive Piovo by depriving him thereof of his Civil Rights guarantees, by inter alia false and fraudulent pretenses, and representations stopping Piovo free flow of Civil Rights Act of 1866 14 Stat. 27 (1866)  by transferring Plaintiff's APN and Real property to benefit the conspiracy.

26.     Coconspirator Ronald A. Colquitt, too, sets out in substance and in part, without ambiguities in that all Joint Interest Principals join knowingly willfully and voluntarily in the

unlawful Civil Rights Conspiracy Agreement to, by permitted inference, deprive Piovo's Civil Rights Identification Document(s) APN and Real property which to date continuous to place Piovo in Civil Rights Violations Harm's way, for eight years and counting, then and now the Joint Interest Principals and Coconspirators simultaneous therewith did knowingly and willfully by means of fraudulently false pretenses and false representation willfully combine, conspire, and agree with others known and unknown to Piovo, without his authority did successfully transfer both the void ab initio Title and Ownership of now fraudulently reassigned by another Third Party defendant MERS stolen Piovo's Civil Rights Identification Document(s) and Information APN Real Property Ownership Identity, which simultaneously directly deprives him of his Civil Rights protection, which places him at a Substantial, Essential and Material Disadvantage by depriving him of the Civil Rights Act of 1866 14 Stat. 27 (1866), and equal protection under the laws of the United States, when stopped Piovo's Civil Rights to make and enforce contracts, to sue, be parties, and give evidence, to inherit, purchase, lease, sell, hold, and convey real and personal property, and to full and equal benefit of all laws and proceedings for the security of person and property, as is enjoyed by white citizens.

27.     Civil Rights coconspirators and defendants herein, Robert Stone and Officer of the Court attorney Ronald Colquitt, CBSK, Chicago Title, together with other known and unknown Civil Rights Conspiracy coconspirators, knowingly and willfully conspire, to violate Plaintiff's Federal Civil Rights and unlawfully transfer Plaintiff's property located at 1853 Indian Bend Drive, Henderson, Nevada first to Robert Stone and immediately thereafter transfer it to coconspirator Tovar-Guzman through but not limited to bank fraud, wire fraud, money laundering and mail fraud. The false and recorded document states that coconspirator Ronald Colquitt is the trustee for Vice Roy Blind Trust when **in fact Colquitt admits in his *self incriminating* sworn under oath**

**positive testimony <u>an adjudicative fact</u>, for which the record speaks... in Plain English that he was not the trustee of Vice Roy Blind Trust at the time he made the transfer.** Piovo offers into evidence positive direct evidence in form of sworn under oath testimonies in compliance with the **<u>Federal Rules of Evidence Rule 104(b),</u>** whereby the relevancy of the evidence is conditioned upon the existence of a fact, by offering the exhibits into evidence and in compliance with the **Federal Rules of Evidence Rule 801(c)** to prove the truth of the matter asserted therein.

**Coconspirator Robert Stone**

28.     Plaintiff alleges and incorporate by reference each of the preceding paragraphs as if fully set forth fully herein below.

29.     On or about July 25, 2006, Robert Stone along with coconspirators Nevada State Bar Licensed Attorney Ronald A. Colquitt; Michelle Wilson; Antonieta Tovar-Guzman; under direction of "Kingpins" and Civil Rights Conspiracy Coconspirators Chicago Title and Direct Endorsement Lenders CBSK voluntarily willfully and intelligently joined in The Civil Rights Conspiracy by fraudulent pretenses, and representations that caused through the Clark County Recorder's Office to part Plaintiff's Real Property Identification Number in violation of both Civil Rights guarantee of equal protection under both the Civil Rights Act of 1866 14 Stat. 27 (1866) then and now by continued Civil Rights Conspiracy of silence and cover up as a Civil Rights Conspiracy of Joint Interest Principals Coconspirators.

        By means of false and fraudulent pretenses and representations does not mention, discuss, or acknowledge the Civil Rights Conspiracy motivated by positive financial interest in group solidarity about the Civil Rights deprivation of Plaintiff's aforementioned Civil Rights, now the continued Civil Rights Conspiracy of silence within the courts is too a Civil Rights Conspiracy coconspirators voluntary, knowing, willful, inherently wrongful devise, scheme and artifice of

28

Joint Interest Principals' intentional Obstruction of Piovo's Due Process, that did actually deprive the Plaintiff of full and equal Civil Rights Benefits to inherit, purchase, lease, sell, hold, and convey real property, whereas by concert of action said Civil Rights Conspiracy coconspirators did unlawfully fraudulent transfer the stolen Piovo's Civil Rights Identification Document(s).

30.     Stone knowingly receives Plaintiff's stolen property Plaintiff's APN via recorded deed and immediately thereafter transfers Plaintiff's APN to coconspirator Tovar-Guzman.

31.     The actions by coconspirator Stone listed herewith but not limited to, in concert with other Civil Rights Conspiracy coconspirators known and unknown constitute deliberate violations of Plaintiff's Civil Rights, in doing so committed  acts violating federal law deprive the Golden Age Senior Citizen Joseph Eugene Piovo of his United States Civil Rights Real Property Identification Number APN afforded to all other citizens of the United States, however deprives Plaintiff who has the same Civil Rights, in every State and Territory, as is enjoyed by white citizens, thereof coconspirators by concert of action did by means of related false and fraudulent Representation and Pretenses devise a Civil Rights Conspiracy scheme and artifice agreement to deprive the Golden Age Senior Citizen Joseph Eugene Piovo of *inter alia* his Civil Rights Identification Document(s) and Information, APN 178-17-811-009, as is Recorded with the Clark County Recorder's Office, Las Vegas, Nevada, and such Joseph Eugene Piovo's indissoluble Civil Rights Identification Documents and Information links Real Property asset to Joseph Eugene Piovo's Property Rights of Citizens that was/then/is currently under the custody and control of Piovo.

Joint Interest Principals Civil Rights Conspiracy Coconspirators did fraudulently and successfully transfer the Title and the Ownership and Joseph Eugene Piovo's Civil Rights Identification Document(s) and Information APN 178-17-811-009 of the Real Property, thus being the case then anything gained from the Civil Rights Conspiracy with sufficient intent in the

course of and in furtherance thereof to advance the aim of the joint interest conspiracy against rights by concert of action, by voluntary and willful Civil Rights Conspiracy agreement is illegally garnered.

The deed transferring Plaintiff's property from Vice Roy to Stone is recorded in the Clark County Recorder's Office on August 3, 2006, under the instrument number 20060803-0003774 and is incorporated herewith as **Exhibit G**.

32.     Robert Stone is directly involved in similar schemes for which he is convicted. Whereas, on June 4, 2009, United States Attorney for the District of Nevada files Conspiracy charges against Robert Stone. Stone is charged with 18 U.S.C. §371 knowingly and willfully combine, conspire, and agree with others known and unknown Civil Rights Conspiracy Coconspirators to commit Bank Fraud to defraud and obtain property under custody and control of federally-insured financial institutions, by means of false and fraudulent pretenses, representation and promises in violation of title 18, United States Code, Section 1344.

33.     The Object of Government's Conspiracy charges against Stone included facts that coconspirator Stone and others illegally obtained money and real property by fraudulently obtaining mortgages through straw buyers to purchase houses in Nevada.

34.     In the same fashion, in depravation of Piovo's Civil Rights Stone facilitated and perpetrated the theft of Plaintiff's APN by unlawful purchase and sale of Piovo's Real property through a straw buyer Tovar-Guzman and Civil Rights Conspiracy coconspirators Colquitt, CBSK and Chicago Title.

**Coconspirator and an Officer of the Court Ronald Colquitt**

35.     Plaintiff alleges and incorporate by reference each of the preceding paragraphs as if fully set forth fully herein below.

36.     On or about May 9, 2006, Nevada State Bar Licensed Attorney Ronald A. Colquitt Civil

Rights Coconspirator voluntarily willfully and intelligently joined in the Joint Interest Principals

Civil Rights Conspiracy Coconspirators by stealing Vice Roy Blind Trust/Piovo's Civil Rights

APN and Real property through removal of stolen APN, did knowingly and willfully combine,

conspire, and agree with others known and unknown to Piovo by means of fraudulently false

pretenses and false representation an impersonation of being a Trustee of Piovo's Vice Roy Blind

Trust  in direct violation of simultaneous therewith the Rightful Civil Rights Act of 1866 14 Stat.

27 (1866), did successfully transfer both the void ab initio Title and Ownership of the Related

Vice Roy Blind Trust/Piovo, now fraudulently reassigned and stolen Piovo's Civil Rights

Identification Document(s) and Information, Real Property Ownership Identity, is the deprivation

of his Property Rights of Citizens Civil Rights by theft.

37.     On August 28, 2007, Civil Rights coconspirator Colquitt testifies under oath in his own

*self incriminating* sworn positive testimony an adjudicative fact, for which the record speaks... in

Plain English and gives clear recollection of the events, Colquitt sworn under oath positive

testimony is incorporated herewith as **Exhibit H**, Colquitt's personal participation and his

empirical knowledge and voluntary willful and intelligently made under oath declarations are

transcribed by a State of Nevada Certified Court Reporter.  Plaintiff offers into evidence positive

direct evidence in form of sworn under oath testimonies in compliance with the **Federal Rules of**

**Evidence Rule 104(b),** whereby the relevancy of the evidence is conditioned upon the existence

of a fact, and in compliance with the **Federal Rules of Evidence Rule 801(c)** to prove the truth of

the matter asserted therein.

Ronald A. Colquitt Sworn Testimony, Page 17, lines 20 thru 23;

   A. I was put in position as trustee as noted by the lenders on that property. I was
      the only one that could get that property back out so Mr. Stone could refinance

31

his house…;

Ronald A. Colquitt Sworn Testimony, Page 33, lines 22 thru 25, Page 34 line 1 and 2;

Q. Did you have anything to do with the lender? You said the lender or mortgage company, you spoke to them?
A. They needed to get the property out of the trust that had been put in there without my knowledge and because…;

Ronald A. Colquitt Sworn Testimony, Page 34, lines 3 thru 14

Q. When you say "they" -
A. The title company that was handling the transaction, they needed to get the property out of the trust that had been put in the trust. And the only one that they would allow to do that was me because **I was the only one on any of the documents listed as a trustee. And I explained to her that I had resigned in November of the previous year. She said she didn't care,** they needed the trust to place the property back to Mr. Stone so that their deal could go forward. I did it got stiffed and closed my file." [bold emphases added]

Ronald A. Colquitt Sworn Testimony, Page 35, lines 2 thru 14;

Q. Did you talk to anybody at the title company?
A. **When I was approached to sign as trustee in May,** they had given the gal at the title - I talked to a woman, I don't know her name, spoke with somebody over there, and **that was when they explained to me that I needed to sign as the trustee.** I said, but this trust doesn't exist. It's dry. It's dead. This is a dead business deal.
Q. So you decided the best thing to do was to sign it?
A. I don't know that I decided the best thing to do was to sign it. **I signed it.**" [bold emphases added]

38.     Colquitt's voluntary, willful, knowing, intentional, wrongful, and inherently wrongful omission of Chicago Title coconspirators identity, which is confirmed by the documents filed in the records of Clarks county, is a willful omission with the intent to withhold vital and important by means of false and fraudulent pretenses, and representations Obstructs Piovo's Due Process of Law vital information, and such Due Process of Law Obstruction by the Joint Interest Principals Led and Influenced conspiracy's code of silence to conceal the identity of all Civil Rights

32

Conspiracy Coconspirators, whereby the entire Joint Interest Principals Led and Influenced Civil Rights Conspiracy coconspirator is a protected unidentifiable group, wherein all Coconspirators herein did willfully, knowingly, voluntarily, intentionally, wrongfully, and inherently wrongfully combine, conspire, and agree with others known and unknown to Piovo to commit Obstruction of Piovo's Due Process, that is, to devise a Joint Interest Principals Led and Influenced scheme and artifice to steal and conceal by code of silence Vice Roy Blind Trust/Piovo's, Civil Rights Act of 1866 14 Stat. 27 (1866) Civil Rights Identification Document(s) and Information APN, and subsequent to the Joint Interest Principals Led conspiracy did knowingly and willfully combine, conspire, and agree with others known and unknown to Piovo to commit fraud and to devise a scheme and artifice to defraud and to obtain money under the custody and control of federally-insured financial institutions, by means of false and fraudulent pretenses, representations and promises that would cause federally-insured financial institutions to part with money.

39.    In fact, Colquitt testifies under oath in a *self incriminating* sworn positive testimony an adjudicative fact, for which the record speaks... in Plain English that he is not the trustee of Vice Roy Blind Trust and had no authority to act as a trustee when he signed the document transferring the property to Robert Stone, but confesses he did it anyway.

40.    Whereby he, Colquitt, the Officer of the Court, actually states in substance and in part that he and other Civil Rights Conspiracy coconspirators "Kingpins" and facilitators, themselves, along with other known and unknown Civil Rights Conspiracy coconspirators all with a blatant disregard for the law: the Lenders and Title Company by concert of action did not care if Colquitt is a Trustee or not, the named defendant Lenders and coconspirator Chicago Title with a blatant disregard for the law influenced and corrupted Colquitt to affix his signature to a falsified deed, and by concert of action transferred title and ownership of Plaintiff's real property without

33

authority of being Trustee of Vice Roy Blind Trust and with the assistance and direction of coconspirator Chicago Title transferring the Plaintiff's property to coconspirator Stone in violation of Plaintiff's Civil Rights.

41.     Whereas Colquitt as an Officer of the Court admits, in this, his *self incriminating* sworn under oath positive testimony that he did it, as a matter of fact, voluntarily willfully intelligently and intentionally joined in their inherently wrongful agreement with the actual corrupt Lender - CBSK and corrupt title company - Chicago Title along with others known and unknown Civil Rights Conspiracy coconspirators with sufficient intent to further the purpose of the Interstate Conspiracy.

42.     Whereas, coconspirator Colquitt being an Officer of the Court while being influenced and corrupted by the Lenders and the Title Company actually voluntarily intelligently willfully intentionally with full knowledge wrongfully and inherently wrongfully knew that the best thing to do is not to sign the falsified fabricated *void ab initio* document as Trustee, he, an Officer of the Court signed it with a complete blatant disregards for the law and in deprivation of Piovo's Civil Rights.

43.     Whereas, coconspirator Colquitt affixed his intentional inherently wrongful signature, the intended Actus Reus; the intended guilty act, the intended wrongful and inherently wrongful deed which renders the actor(s) liable combined with the *mens rea* the blatant disregard for the law.

44.     Whereas, coconspirator Colquitt breaches the Model Rules of Ethics, and/or Ethical Rules and is part and partial by his own direct *self incriminating* sworn evidence of not giving a formal withdrawal from the Civil Rights Conspiracy by acting in the commission of the Civil Rights Conspiracy, voluntarily, knowingly, intentionally, wrongfully and inherently wrongfully commits inter alia by illegal act, that is, to devise a Joint Interest Principals Led and Influenced scheme and

artifice to steal and conceal by code of silence Piovo's, Civil Rights Act of 1866 14 Stat. 27 (1866), Civil Rights Identification Document(s) and Information APN, and subsequent to the Joint Interest Principals Led conspiracy knowingly and willfully combine, conspire, and agree with others known and unknown to Piovo to commit fraud, that is, to devise a scheme and artifice to defraud and to obtain money under the custody and control of federally-insured financial institutions, by means of false and fraudulent pretenses, representations and promises that would cause federally-insured financial institutions to part with money in Violation of Plaintiff's Federal Civil Rights.

**Coconspirator Tovar-Guzman**

45.     Plaintiff alleges and incorporate by reference each of the preceding paragraphs as if fully set forth fully herein below.

46.     Coconspirator Tovar-Guzman admits her involvement in her own *self incriminating* sworn testimony <u>an adjudicative fact</u>, for which the record speaks… in Plain English, dated August 2, 2007, taken by Steven J. Karen, Plaintiff's counsel at the time. Tovar-Guzman testimony is incorporated herewith as **Exhibit J**.

47.     Whereas, coconspirator Tovar-Guzman to further the purpose of the Conspiracy, under direction of "Kingpins" and Civil Rights Conspiracy Coconspirators Chicago Title and Direct Endorsement Lenders CBSK voluntarily willfully and intelligently joined in The Civil Rights Conspiracy coconspirator by fraudulent pretenses, and representations that caused Plaintiff to part with Real Property Identification Number in violation of both Civil Rights guarantee of equal protection under both the Civil Rights Act of 1866 14 Stat. 27 (1866) then and now by continued Civil Rights Conspiracy of silence and cover up as a Civil Rights Conspiracy of Joint Interest Principals Coconspirators, that by means of false and fraudulent pretenses and representations

does not mention, discuss, or acknowledge the Civil Rights Conspiracy motivated by positive financial interest and gain in group solidarity to deprive and encroach upon Plaintiff's Civil Rights.

The continued Civil Rights Conspiracy of silence within the courts is too a Civil Rights Conspiracy coconspirators voluntary, knowing, willful, inherently wrongful devise, scheme and artifice of Joint Interest Principals' intentional Obstruction of Piovo's Due Process, from the Civil Rights infringement due to stolen Vice Roy Blind Trust/Piovo's Civil Rights Identification Document(s) and Information APN and Real property in violations of the Laws of the United States and Civil Rights Act of 1866 14 Stat. 27 (1866) whereas Tovar-Guzman did actually deprive the Plaintiff of full and equal Civil Rights Benefits to inherit, purchase, lease, sell, hold, and convey real property, whereas by concert of action said Civil Rights Conspiracy coconspirators did unlawfully fraudulently transfer the stolen Piovo's Civil Rights APN and Ownership of Real property.

48.    Coconspirator Tovar-Guzman to further the purpose of the Conspiracy, under direction of "Kingpins" and Civil Rights Conspiracy Coconspirators Chicago Title and Direct Endorsement Lenders CBSK voluntarily willfully and intelligently combine, conspire, and agree with others, known and unknown to Piovo, to commit fraud, that is, to devise a scheme and artifice to defraud and to obtain money under the custody and control of federally-insured financial institutions, by means of false and fraudulent pretenses, representations and promises that would cause federally-insured financial institutions to part with money.

49.    Guzman admits under oath that she agreed to act as a straw buyer and acquired Plaintiff's property through bank fraud and in deprivation of Piovo's Civil Rights.

50.    Coconspirator Guzman in her own self incriminating sworn positive testimony admits that

36

she is involved in, however not limited to in violation of Civil Rights Act of 1866 14 Stat. 27 (1866), Civil Rights Identification Document(s) and Information APN and fraudulent transfer of 1853 Indian Bend Drive, Henderson, Nevada and wherein Tovar-Guzman transfers the Title and Ownership of Plaintiff's property to herself and that she with full knowledge acts as a straw buyer and receives $3,000.00 cash from one Franco Chavez for her involvement.

Guzman testimony Page 39, Line 6 through 23:

    Q. Did they promise anything out of this for you?
    A. To me a week later, later, after I signed gall the papers. they said to me they were going to, like, thankful something.
    Q. What do you mean thankful something? I
    A. Well, that helped them.
    Q. What were they going to give you?
    A. Weil, eventually -- well, they were going to give me -- uh-huh. Yes. They gave me $3,000.
    Q. Did they give you the $3,000?
    A. Not at that time. Later.
    Q. At some point they gave you $3,000?
    A. Yes.
    Q. When?
    A. I do not remember.
    Q. Was it in cash?
    A. In cash."

Guzman deposition Page 40, line 20 through 25:

    "Q. Okay. Let's talk about this $3,000 for a moment. Who gave yon the $3,000?
    A. It was given by Franco Chavez, given to him by Aly.
    Q. Franco Chavez handed you the money?
    A. Yes, yes, through Aly, though."

Guzman deposition Page 72, line 10 through 19.

    "Q. From what you described here, you got paid $3,000, you signed a bunch of papers without asking any questions involving the sale of a house, right? Is that true?
    A. If they received?

Q.  I want you to first answer if what I've just said is true.
A.  Uh-huh.
Q.  Yes?
A.  Yes.

51.    As part of the crime of conspiracy and to further the purpose of the Conspiracy, under direction of "Kingpins" and Civil Rights Conspiracy Coconspirators Chicago Title and Direct Endorsement Lenders CBSK voluntarily willfully and intelligently joined in The Civil Rights Conspiracy to devise a Joint Interest Principals Led and Influenced scheme and artifice to steal and conceal by code of silence Piovo's, Civil Rights Act of 1866 14 Stat. 27 (1866).

On or about July 24, 2006, Tovar-Guzman agreed to borrow 680,000 from defendant CBSK, unlawfully secured by Plaintiff's property. Two instruments are signed by Tovar-Guzman on this date; (1) Adjustable Rate Note [hereafter Note] between Tovar-Guzman and CBSK. (2) Deed of Trust between Tovar-Guzman and CBSK.

52.    Coconspirator Guzman voluntarily willfully intelligently and intentionally joined in the Civil Rights Conspiracy's inherently wrongful agreement with the actual corrupt Lender - CBSK and corrupt Title company - Chicago Title along with others known and unknown Civil Rights Conspiracy coconspirators with sufficient intent to further the purpose of the Interstate Conspiracy.

53.    Coconspirator Guzman admits in her sworn self incriminating positive testimony that between the year 2004 and 2006 her income was around $30,000.

Tovar-Guzman's testimony Page 24, Line 4 through Page 27 Line 19.

Q.  Do you recall approximately how much your gross income was for 2006 that you reported on your income taxes?
A.  Let me try to think now. 2006, right? Let's see. Okay, I don't want you to take just like that because, well, I do not remember exactly if in that occasion, was the last time that I did taxes for Mary Kay. And that is when I did something. But nothing else. From there on, if you check, you'll see bad -- uh-huh.

38

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Q. Listen carefully -

A. That is--

Q. Listen carefully to my question.

A. Okay.

Q. What was the amount, gross income that you filed as your income in 2006 tax return? Please give me your best estimate.

A. Okay, why are you asking me that?

Q. Once again, I'm here to ask the questions, you have to answer them.

A. I don't think it's logic for you to do it. It is what it is. Look-- I don't know if it's correct that I can talk, but I need to -- if you're suing me for one house that I purchased under a year recently, why are you asking for 2006 now?

Q. Once again, I'm going to ask you to answer the question. We're going to be here a lot longer if you start asking me questions. I already told you, I'm not going to answer your questions.

A. Exactly, I'm not too sure.

Q. Give me your best estimate.

A. I don't know if I -- 30,000. I don't know. That was my best year at Mary Kay.

Q. Let's go to the 2005 tax year. Give me your best estimate, what you filed as your income on your tax return.

A. I do not remember. Truth is that, and I just cannot give you numbers.

Q. Was it more than 30,000?

A. No.

Q. Under 30,000?

A. I don't remember.

Q. You know it was not more than 30,000, though.

A. No.

Q. Are you all right?

A. Yes.

Q. Are you going to be okay or do you want to take a break?

A. No, let's continue, because I have to go back there.

Q. Ready?

A. Yes.

Q. 2004. I want your best estimate of the income reported of your taxes, and let's start by asking, was it more than 30,000?

A. I do not remember.

Q. You don't know if it was more than 30,000?

A. I do not remember. That's the truth.

Q. You don't remember if it was less than 30,000?

A. If you wish, I can -- if you need copies, I can send you the copies of every year that I've done.

39

Q. What's the most you ever made in a year?

A. The most that I made in one year is, like, 33,000. When I was at Mary Kay.

Q. What year was that?

A. I don't remember.

Q. Were you married at the time?

A. Yes.

Q. Bow much was your husband's income?

A. My husband's work is like sales. Sometimes rains, the customers don't want because it's going to rain. And they don't want – they have their cars dean. That's why we don't have something that you can say with certainly (sic) how much money he makes.

Q. Does he have a car cleaning business as well?

A. Yes.

Q. And a carpet cleaning business?

A. Yes.

Q. What's the most that he's ever earned while you've been married for the year?

A. I do not remember.

Q. More than 30,000?

A. No.

Q. Less than 30,000?

A. I just know that he has never made much. I was making more than him in Mary Kay."

54.    In fact by her own admission Tovar-Guzman could never qualify for a $680,000 loan.

55.    For the purpose of this complaint prima facie evidence in the Clark County Recorder's office makes it clear that coconspirator CBSK made a loan to Tovar-Guzman, by CBSK recording a Deed of Trust given by Tovar-Guzman to CBSK. Coconspirator Tovar-Guzman admits participation in the instant Civil Rights Conspiracy voluntarily and willfully agreed with other members of the Civil Rights Conspiracy to intelligently join in the unlawful agreement to voluntarily, willfully intentionally wrongfully, and inherently wrongfully to intelligently knowingly defraud Piovo and federally-insured financial institutions and did so by unlawfully transferring the Title and Ownership of Plaintiff's property to herself. Recorded Property Deed in Guzman's name is incorporated herewith as **Exhibit K**

56.     In the course of and in furtherance of the joint interest conspiracy Coconspirator Tovar-Guzman through her attorney coconspirator Brennan admits that on April 6, 2012, Tovar-Guzman files for Chapter 7 Bankruptcy protection under the name of Antonieta Tovar a/k/a Antonieta Tovar Guzman; a/k/a Maria Antonieta Tovar; a/k/a Maria A Tovar. Case Number 6:12-bk-18702-DS.

57.     The original Bankruptcy Schedules were signed under penalty of perjury. Tovar-Guzman filed petition for bankruptcy protection wherein Plaintiff's property is listed as Tovar-Guzman's asset. Tovar-Guzman received full discharge Infra *jurisdictionem*...within the jurisdiction of federal bankruptcy protection on July 20, 2012. The filing and the discharge, which included her fraudulent theft of Plaintiff's APN and the Real property, when included in the fraudulent bankruptcy filing necessarily involved the Federal Government and the Federal Government Bankruptcy Division. Bankruptcy Court requires that petitioner submits all statements to be true and under oath.

58.     Whereas, coconspirator Tovar-Guzman affixed her intentional inherently wrongful signature to the bankruptcy filing, the intended Actus Reus; the intended guilty act, the intended wrongful and inherently wrongful deed which renders the actor liable combined with the *mens rea* the blatant disregard for the law voluntarily, knowingly, intentionally, wrongfully and inherently wrongfully commits *inter alia* by illegal act, that is, continues to participate in a Joint Interest Principals Led and Influenced scheme and artifice to conceal by code of silence from the bankruptcy court and Piovo the actual acts of Conspiracy in violation of bankruptcy rules and Piovo's Civil Rights Act of 1866 14 Stat. 27 (1866), Civil Rights Identification Document(s) and Information APN .

59.     Piovo discovered the information about the Tovar-Guzman's bankruptcy filing from a

41

December 17, 2013 letter sent by Tovar-Guzman's counsel Shauna Brennan. Plaintiff asks the court to take *Judicial Notice* of the fact that Piovo was not informed about the bankruptcy nor was Plaintiff listed as Guzman's creditor, in fact Plaintiff could never be listed as Tovar-Guzman's creditor because Plaintiff never extended any form of credit to Tovar-Guzman. Any attempt to suggest that Plaintiff is Tovar-Guzman's creditor is hereby denied in its entirety, such attempt would only suggest that Plaintiff was somehow involved in the conspiracy to steal his own property.

60.    Upon review of Tovar-Guzman Chapter 7 filing, Piovo discovered that nowhere in the filing and especially beginning with page 11 Schedule A through page 23 Piovo and/or Vice Roy Blind Trust is not listed as a creditor and as such were not notified of the filing.

61.    Furthermore, pursuant to 11 U.S. Code § 523(a)(2)(A), Guzman bankruptcy discharge is not valid.

    11 U.S. Code § 523 (a)(2)(A)- Exceptions to discharge

(a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this
    title does not discharge an individual debtor from any debt—
        (2) for money, property, services, or an extension, renewal, or refinancing of
        credit, to the extent obtained by—
            (A) false pretenses, a false representation, or actual fraud, other
            than a statement respecting the debtor's or an insider's financial
            condition;

        AND

Pursuant to 11 U.S. Code § 727(a)(4)(A) and (B) - Discharge
    (a) The court shall grant the debtor a discharge, unless—

        (4) the debtor knowingly and fraudulently, in or in connection with the
        case-
            (A) made a false oath or account;
            (B) presented or used a false claim;

62.      Coconspirator Tovar-Guzman continues her Civil Rights Conspiracy activity and made false declaration in existent bankruptcy proceeding by claiming Plaintiff's property as her own asset in furtherance of to illegally acquire and retain illegal ownership of Plaintiff's property; this related federal act committed in the past present and in the future by the Civil Rights Conspiracy member Tovar-Guzman, with a complete disregard for the Civil Rights Conspiracy Laws of the United States and in violation of Piovo's Civil Rights and Specifically Civil Rights Act of 1866 14 Stat. 27 (1866) Civil Rights Identification Document(s) and Information APN.

63.      The unlawful actions by coconspirator Tovar-Guzman listed herewith but not limited to, in concert with other Civil Rights Conspiracy coconspirators known and unknown constitute deliberate violations of Plaintiff's Civil Rights, Civil Rights Act of 1866 14 Stat. 27 (1866) whereas Tovar-Guzman voluntarily, knowingly, intentionally, wrongfully and inherently wrongfully commits *inter alia* by illegal act, that is, to participate in a Joint Interest Principals Led and Influenced scheme and artifice to steal and conceal by code of silence Piovo's, Civil Rights Act of 1866 14 Stat. 27 (1866), Civil Rights Identification Document(s) and Information APN, and did knowingly and willfully combine, conspire, and agree with others known and unknown to Piovo to commit fraud, and to participate in a scheme and artifice to defraud and to obtain money under the custody and control of federally-insured financial institutions, by means of false and fraudulent pretenses, representations and promises that would cause federally-insured financial institutions to part with money in Violation of Piovo's Federal Civil Rights in doing so commits  acts violating federal law when Guzman illegally and unlawfully transfers title, and transfers ownership of Piovo's Identification Document(s) and Information of Vice Roy Blind Trust/Plaintiff's APN and ownership of Real property to herself.

43

**Coconspirator Michelle Wilson**

64.    Plaintiff alleges and incorporate by reference each of the preceding paragraphs as if fully set forth fully herein below.

65.    Coconspirator Michelle Wilson did knowingly and willfully combine, conspire, and agree with others known and unknown Civil Rights Conspiracy coconspirators did unlawfully act as Stone's "AGENT" to transfer the subject property at 1853 Indian Bend Drive, Henderson to coconspirator Stone. Wilson has signed under penalty of perjury and caused to be filed in the public record in the Clark County Recorder's Office a form styled "Declaration of Value" wherein Stone is listed as a Buyer (Grantee) and Wilson claimed to act in the Capacity of Grantee's Agent. Wilson acknowledged under penalty of perjury on the said "Declaration of Value" that "the information provided is correct…" and that ownership interest being transferred to coconspirator Stone amounts to 100%.

66.    Whereas, coconspirator Wilson to further the purpose of the Conspiracy, acts by concert of action joined in the Civil Rights Conspiracy of the Lenders, Chicago Title Company, Colquitt, Stone, Tovar-Guzman and other known and unknown Civil Rights Conspiracy coconspirators with sufficient intent to further the purpose of voluntarily willfully and intelligently stealing of Piovo's Civil Rights Identification Document(s) and Information APN did knowingly and willfully by means of fraudulently false pretenses and false representation deprives Piovo of the Civil Rights Act of 1866 14 Stat. 27 (1866) by means of the stolen identification and deprives Piovo of Civil Rights, whereas Wilson did knowingly and willfully combine, conspire, and agree with others known and unknown to Piovo, without his authority did participate in successful transfer both the void ab initio Title and Ownership of Piovo's, now fraudulently reassigned stolen Identification Document(s) and Information APN, and Real Property ownership Identity.

67.     Wilson's recorded Declaration of Value is incorporated herewith as **Exhibit I**.

**Coconspirator and an Officer of the Court Shauna Brennan**

68.     Plaintiff alleges and incorporate by reference each of the preceding paragraphs as if fully set forth fully herein below.

69.     Coconspirator Brennan aids and abets coconspirator Tovar-Guzman to further the purpose of the Interstate Conspiracy and Civil Rights Conspiracy's related federal acts deliberate violations of Plaintiff's Civil Rights, Civil Rights Act of 1866 14 Stat. 27 (1866), Civil Rights Identification Document(s) and Information APN, voluntarily, knowingly, intentionally, wrongfully and inherently wrongfully commits *inter alia* by illegal act, whereas, Brennan participates in a scheme and artifice to conceal by code of silence Piovo's, Tovar-Guzman acts and violations of Civil Rights Act of 1866 14 Stat. 27 (1866), and herself commits violations of Piovo's Civil Rights in the past present and in the future by becoming active member in the conspiracy.

70.     Brennan falsely claims that Piovo knew about the Bankruptcy filing, where in fact first time Piovo found out about Tovar-Guzman bankruptcy filing was in a letter from Brennan dated December 17, 2013. However, even if Piovo was listed as a creditor, which he wasn't, Piovo nor Vice Roy Blind Trust are not now nor ever were Tovar-Guzman's creditor(s) under any definition. A thief cannot deliver good title to the bankruptcy court.

71.     On or about December 17, 2013, coconspirator Brennan sent an extortionist threatening and intentionally misleading letter, incorporated herewith as **Exhibit L**, to Piovo, said letter states in pertinent part the following:

> "Please be advised that Ms. Tovar-Guzman filed for Chapter 7 bankruptcy protection on April 6, 2012, and received a full discharge on July 20, 2012. I have verified that the property located at 1853 Indian Bend Drive Henderson, Nevada ("Property") was included in this bankruptcy filing. Consequently any causes of

action concerning Antonieta Tovar-Guzman's interest in and to this Property has been discharged under the Bankruptcy and any attempt to collect against her is a violation of Federal Bankruptcy protection. **Therefore demand is made that you immediately dismiss Antonieta Tovar-Guzman from the above-referenced lawsuit.**" [Bold emphases added]

72.    Brennan, an Officer of the Court, a lawyer is tampering with evidence contained within Tovar-Guzman's sworn testimony when Tovar-Guzman and as her attorney Brennan threatens Piovo with a counter lawsuit, which instilled additional fear of a countersuit: In substance and in part Tovar-Guzman's lawyer's extortionist threat is: Therefore demand is made that you immediately dismiss Antonieta Tovar-Guzman from the above-referenced lawsuit, (that infers...and if you don't I'm going to sue you) which instilled additional fear of a further loss of monies to Piovo by a countersuit. If Piovo does not withdraw his lawsuit whereby Tovar-Guzman's perjured testimony, her sworn deposition, does not result in liability to Tovar-Guzman, she will consider offering whatever assistance she can, provided that it is not contrary to the current Bankruptcy discharge and does not result in liability to her.

73.    Brennan's threat is to have Piovo let Tovar-Guzman, her client, off the hook; or Shauna Brennan, a third party, blows up the case. Piovo is wrongly deprived of adequate relief due when Brennan a third party interference and deprives Piovo of due process to legal remedies, when she voluntarily, knowingly, intentionally, willfully, wrongfully and inherently wrongfully makes an unlawful agreement to become a self incriminating victim of fraudulent pleadings, in order to clear title to the property and to that end Shauna Brennan – Tovar-Guzman's lawyer and Tovar-Guzman will consider offering whatever assistance they can, provided that Piovo's legal action is not contrary to Tovar-Guzman's current Bankruptcy discharge, and does not result in liability to her.

74.    The third paragraph of the letter is clearly an attempt cover up the conspiracy and an offer

to cover up coconspirator Tovar-Guzman's acts as well as admission of such acts.

> "It appears that you are attempting to clear title to the Property and to that end my client will consider offering whatever assistance she can, provided that it is not contrary to the current Bankruptcy discharge and does not result in liability to her. I am prepared to draft a Stipulation and Release of any interest in the property, which should satisfy your objectives. Please contact my office to discuss options."

75.     Brennan, by Tovar-Guzman's sworn testimony, knows of Tovar-Guzman's Sworn Testimony whereby Brennan admits that Tovar-Guzman testified under oath that she is a straw buyer through Franco Chaves for her to buy a house for Ali. Brennan knows or should know about Stone's arrest and all known and unknown coconspirator's concert of action in Guzman's purchase of the house and deprivation of Piovo's Civil Rights Act of 1866 14 Stat. 27 (1866).

76.     Brennan's voluntary, willful, knowing, intentional, wrongful, and inherently wrongful omission of Tovar-Guzman's acts and violations of Piovo's Civil Rights is a willful omission with the intent to withhold vital and important information from the Bankruptcy court by means of false and fraudulent pretenses, and extortionist misrepresentations to Piovo Obstructs Piovo's Due Process of Law and conspiracy's code of silence continue to conceal deprivation and violations by code of silence Piovo's, Civil Rights Act of 1866 14 Stat. 27 (1866).

77.     Brennan, a lawyer and a bankruptcy lawyer at that, with full knowledge of 11 U.S.C. § 523 (a)(2)(A) and 11 U.S.C. § 727(a)(4)(A) and (B) voluntary, willful, knowing, intentional, wrongful, and inherently wrongful participation in Piovo's Civil Rights deprivation is a willful omission with the intent to withhold vital and important information from the Bankruptcy court and the instant Federal court by means of false and fraudulent pretenses, and extortionist misrepresentations and continuous cover up and Obstruction Piovo's Due Process of Law and conspiracy's code of silence continue to conceal deprivation and violations by code of silence Piovo's, Civil Rights Act of 1866 14 Stat. 27 (1866) and in order to continue such deprivation,

47

cover up and violation of Piovo Civil Rights Brennan files without Piovo's consent or knowledge the Release of Tovar-Guzman's Purported Interest in Piovo's property in the records of Clark County Recorder's Office denying Piovo the due process to legal remedies. The release is incorporated herewith as **Exhibit M**.

**Coconspirator CBSK**

78.     Plaintiff alleges and incorporate by reference each of the preceding paragraphs as if fully set forth fully herein below.

79.     On or about July 24, 2006,  coconspirator CBSK - Direct Endorsement Lender, did knowingly, voluntarily, intelligently, willfully, combine, conspire, and agree with others known and unknown Civil Rights Conspiracy coconspirators and did unlawfully act by approving the loan to coconspirator Guzman, disregarding Federal and CBSK own underwriting requirements.

80.     Whereas, coconspirator CBSK to further the purpose of the Conspiracy, known "Kingpin" and Civil Rights Conspiracy Coconspirator and Direct Endorsement Lender CBSK voluntarily willfully and intelligently joined in The Civil Rights Conspiracy coconspirator by fraudulent pretenses, and representations that caused the Clark County Recorder's Office to part Plaintiff's Real Property Identification Number APN in violation of both Civil Rights guarantee of equal protection under both the Civil Rights Act of 1866 14 Stat. 27 (1866) then and now by continued Civil Rights Conspiracy of silence and cover up as a Civil Rights Conspiracy of Joint Interest Principals Coconspirators, that by means of false and fraudulent pretenses and representations does not mention, discuss, or acknowledge the Civil Rights Conspiracy motivated by positive financial interest in group solidarity of deprivation of Plaintiff's aforementioned Civil Rights, now the continued Civil Rights Conspiracy of silence is too a Civil Rights Conspiracy coconspirators voluntary, knowing, willful, inherently wrongful devise, scheme and artifice

deprivation of Civil Rights and stolen Joseph Eugene Piovo's Civil Rights Identification Document(s) and Information APN in violations of the Laws of the United States and Civil Rights Act of 1866 14 Stat. 27 (1866), that did actually deprive the Piovo of full and equal Civil Rights Benefits to inherit, purchase, lease, sell, hold, and convey real property, whereas by concert of action said Civil Rights Conspiracy coconspirators did unlawfully fraudulent transfer the stolen Piovo's Civil Rights Identification Document(s) and Information APN.

81.    Pursuant to Colquitt's sworn testimony CBSK and Chicago Title prior to Tovar-Guzman's closing of the loan contact coconspirator Colquitt to influence his actions to join the Civil Rights Conspiracy.

82.    CBSK directed another coconspirator Chicago Title to perform the closing of Tovar-Guzman's loan. CBSK repeatedly violated Federal self-reporting requirements and kept coconspirator Tovar-Guzman's loan a secret.

83.    CBSK is responsible for all aspects of mortgage application, the property analysis, and the underwriting of the loan. CBSK is responsible for employment of underwriters to evaluate Guzman's credit characteristics, the adequacy and stability of Tovar-Guzman's income to meet the periodic payments under the mortgage and all other obligations, and the adequacy of Tovar-Guzman's available assets to close the transaction, and render the underwriting decision in accordance with applicable regulations, policies and procedures. In addition, CBSK had to ensure that its underwriters "had appraised the property in accordance with the underwriting standards and requirements".

84.    An attempt was made by unknown coconspirators to enter Piovo's property for the purpose of conducting real estate appraisal. Plaintiff refused to allow said appraisal to take place since plaintiff never requested one to be done, and asked two unknown coconspirators to leave the

1    property.

2    85.    In her sworn under oath testimony coconspirator Tovar-Guzman admits that she only

3    made at most between 30,000 and 33,000 dollars a year upon issuance of the loan clearly

4    indicative pursuant to Federal guidelines such salary would not qualify Tovar-Guzman for a loan

5    in the amount of $680,000.

6
7    86.    On October 9, 2007, Pursuant to Section 50319 of California Financial Code, Preston

8    Dufauchard, California Corporations Commissioner issued an Order to CBSK to Discontinue

9    Residential Mortgage Lending and/or Servicing Activities. The order is incorporated herewith as

10   **Exhibit D.** And on November 5, 2007, California Corporations Commissioner issued an Order

11
12   Summarily revoking CBSK lending/servicing license. The order is incorporated herewith as

13   **Exhibit E.** In addition Nevada Secretary of State permanently revoked this coconspirator as well.

14   CBSK claims an interest in the Plaintiff's property through a recorded Deed of Trust given to

15   CBSK by coconspirator Tovar-Guzman. The recorded Deed of Trust is incorporated herewith as

16
17   **Exhibit F.**

18   87.    Coconspirator CBSK and the instant Civil Rights Conspiracy voluntarily and willfully

19   agree with one another to intelligently join in the unlawful agreement to willfully, knowingly,

20   voluntarily, intentionally, wrongfully, and inherently wrongfully combine, conspire, and agree

21   with others known and unknown to Piovo to act as one of the Joint Interest Principals' Led and

22
23   Influenced scheme and artifice to steal, conceal and deprive Piovo's, Civil Rights Act of 1866 14

24   Stat. 27 (1866), Civil Rights Identification Document(s) and Information APN, and subsequent to

25   the Joint Interest Principals Led and Influenced Coconspirators herein did knowingly and

26   willfully combine, conspire, and agree with others known and unknown to Piovo to commit fraud,

27   that is, to devise a scheme and artifice to defraud and to obtain money under the custody and

28

50

control of federally-insured financial institutions, by means of false and fraudulent pretenses, representations and promises that would cause federally-insured financial institutions to part with money.

88.     The unlawful actions by coconspirator CBSK listed herewith but not limited to, in concert with other coconspirators known and unknown constitute deliberate violations of Plaintiff's Civil Rights, Civil Right to Life, in doing so commits acts violating federal law when illegally and unlawfully participated in the transfer of title and transfer of ownership of Piovo's real property to Coconspirator Tovar-Guzman.

**Coconspirator Chicago Title**

89.     Plaintiff alleges and incorporate by reference each of the preceding paragraphs as if fully set forth fully herein below.

90.     On or about July 24, 2006, Civil Rights Coconspirator Chicago Title, did knowingly, voluntarily, intelligently, willfully,c ombine, conspire, and agree with others known and unknown Civil Rights Conspiracy Coconspirators to voluntarily, willfully, knowingly, intentionally, wrongfully and inherently wrongfully with the requisite intent, by concert of action, did successfully commit the Civil Rights Conspiracy violation **firstly with callous** disregard Piovo's Civil Rights together in concert of action with Civil Rights Conspiracy Coconspirator Ronald Colquitt who disregards Federal law steals Piovo's Civil Rights Identification Document(s) and Information APN, was done in direct violation of the Civil Rights Act of 1866 14 Stat. 27 (1866), by means of the stolen Real property and deprived Piovo's Civil Rights and did knowingly and willfully combine, conspire, and agree with others known and unknown to Piovo, without his authority did successfully transfer both the void ab initio Title and Ownership of the Related Piovo's now fraudulently reassigned and stolen Real Property.

CBSK subsequent to, did egregiously stop the free flow of his Civil Rights Act of 1866 14 STAT. 27 (1866) Civil Rights Guarantees, with the knowing, willful, wrongful intent to in substance and in part, inter alia, did commit the essential Substantial and material quintessential element and Primary Necessary Objective of the Civil Rights Conspiracy, did deprive Piovo by transfer of his Identification Document(s) and Information APN, by means of false and fraudulent pretenses, and representations did cause the Clark County Recorder's Office to reassign the void ab initio Piovo's Civil Rights Identification Document(s) and Information APN.

Ronald A. Colquitt Sworn Deposition, Page 34, lines 3 thru 14

> "Q. When you say "they" -
> A. The title company that was handling the transaction, they needed to get the property out of the trust that had been put in the trust. And the only one that they would allow to do that was me because **I was the only one on any of the documents listed as a trustee. And I explained to her that I had resigned in November of the previous year. She said she didn't care**, they needed the trust to place the property back to Mr. Stone so that their deal could go forward. I did it got stiffed and closed my file." [bold emphases added]

Ronald A. Colquitt Sworn Deposition, Page 35, lines 2 thru 14;

> "Q. Did you talk to anybody at the title company?
> A. **When I was approached to sign as trustee in May, they had given the gal at the title** - I talked to a woman, I don't know her name, spoke with somebody over there, and **that was when they explained to me that I needed to sign as the trustee.** I said, but this trust doesn't exist. It's dry. It's dead. This is a dead business deal.
> Q. So you decided the best thing to do was to sign it?
> A. I don't know that I decided the best thing to do was to sign it. **I signed it.**" [bold emphases added]

91.     Coconspirator Chicago Title and the instant Civil Rights Conspiracy voluntarily and willfully agree with one another to intelligently join in the unlawful agreement to willfully,

knowingly, voluntarily, intentionally, wrongfully, and inherently wrongfully combine, conspire, and agree with others known and unknown to Piovo to act as one of the Joint Interest Principals' Led and Influenced scheme and artifice to steal, conceal and deprive Piovo's, Civil Rights Act of 1866 14 Stat. 27 (1866), Civil Rights Identification Document(s) and Information APN, and subsequent to the Joint Interest Principals Led and Influenced Coconspirators herein did knowingly and willfully combine, conspire, and agree with others known and unknown to Piovo to commit fraud, that is, to devise a scheme and artifice to defraud and to obtain money under the custody and control of federally-insured financial institutions, by means of false and fraudulent pretenses, representations and promises that would cause federally-insured financial institutions to part with money and Piovo lose his property.

92.     The unlawful actions by coconspirator Chicago Title listed herewith but not limited to, in concert with other Civil Rights Conspiracy Coconspirators known and unknown constitute deliberate violations of Plaintiff's Civil Rights, Civil Right to Life, and in doing so commits acts violating federal law when illegally and unlawfully participated in the transfer of title and transfer of ownership of Piovo's real property to Coconspirator Guzman constitute deliberate violations of Piovo's Civil Rights Act of 1866 14 Stat. 27 (1866) are indissoluble Civil Rights and Equal Protection under the law deprived by fraud.

**Coconspirators MERS and MERSCORP Holdings, Inc.**

93.     Plaintiff alleges and incorporate by reference each of the preceding paragraphs as if fully set forth fully herein below.

94.     For the purposes of this pleading, reference to MERS includes reference to MERSCORP Holdings, Inc. a/k/a MERSCORP, Inc. ("MERSCORP") is MERS's alter ego.

95.     Coconspirator MERS joined in the Civil Rights conspiracy did knowingly, voluntarily,

intelligently, willfully, combine, conspire, and agree with others known and unknown Civil

Rights Conspiracy coconspirators to act as one of the Joint Interest Principals Led and Influenced

scheme and artifice to steal, conceal and deprive Piovo's, Civil Rights Act of 1866 14 Stat. 27

(1866) and subsequent to the Joint Interest Principals Led and Influenced Coconspirators herein

did knowingly and willfully combine, conspire, and agree with others known and unknown to

Piovo to commit fraud, that is, to devise a scheme and artifice to defraud and to obtain money

under the custody and control of federally-insured financial institutions, by means of false and

fraudulent pretenses, representations and promises that would cause federally-insured financial

institutions to part with money.

96.     MERS is at all times cognizant of the Civil Rights violations by other coconspirators

through a lawsuit filed by Piovo in Nevada state court, receiving copies of the Colquitt and Tovar-

Guzman's sworn testimony positive testimony an adjudicative fact, for which the record speaks…

in Plain English and their admission to the Civil Rights violations depriving Plaintiff of his Civil

Rights as well as Plaintiff's Notice of the Pendency of Action Sent by Piovo to MERS on

September 12, 2013, describing its own violations and the conspiracy by other Civil Rights

Conspiracy coconspirators, Civil Rights Conspiracy member and coconspirator MERS and their

lawyers failed to withdraw and instead continue to engage Piovo in the fight for his Life and

continue to participate in the  conspiracy and violations of Plaintiff's Civil Rights with others

known and unknown Civil Rights Conspiracy coconspirators and others known and unknown

Civil Rights Conspiracy coconspirators conspire to deprive Piovo of his Civil.

97.     Civil Rights Coconspirators' MERS lawyers by concert of action joined in the Civil

Rights Conspiracy of the Lenders, Chicago Title Company, Colquitt, Stone, Tovar-Guzman and

other known and unknown Civil Rights Conspiracy coconspirators by scheme and artifice to steal,

conceal and deprive Piovo's, Civil Rights Act of 1866 14 Stat. 27 (1866).

98.     On March 20, 2007, People's Choice Home Loan, Inc. files voluntary Bankruptcy Petition in the United States Bankruptcy Court, Central District of California, Case No.: 8:07−bk−10767−RK. The filing is incorporated herewith as **Exhibit N**.

99.     On May 2, 2007, Wendy V. Perry acting as Assistant Secretary of MERS executes substitution of trustee dated the same date May 2, 2007, whereas MERS did knowingly, voluntarily, intelligently, willfully, combine, conspire, and agree with others known and unknown Civil Rights Conspiracy coconspirators participate as one of the Joint Interest Principals Led and Influenced scheme and artifice to steal, conceal and deprive Piovo's, Civil Rights Act of 1866 14 Stat. 27 (1866) executes said substitution of trustee in San Diego, California and records it in Las Vegas Nevada Clarks County Recorder's office, where Fidelity National Default Solutions acting on behalf of MERS where it states that MERS allegedly is the original Beneficiary under the Tovar-Guzman Deed of Trust terminated the appointment of the original trustee Chicago Title, and appointed a substitute trustee CAL-WESTERN RECONVEYANCE CORPORATION in their place as trustee of the deed of trust. The void *ab initio* Substitution of Trustee in the Clark County Recorder's Office is under the Instrument Number 20070502-0004131 and is incorporated herewith as **Exhibit O**.

100.     On October 15, 2007, a void *ab initio* substitution of trustee dated October 9, 2007 is recorded in Clarks County Recorder's office, where Fidelity National Default Solutions acting on behalf of Civil Rights Conspiracy coconspirator MERS in furtherance of the conspiracy acts as "present" Beneficiary and Civil Rights Conspiracy coconspirator CBSK as the original Beneficiary terminate the appointment of the original trustee again, Civil Rights Conspiracy coconspirator Chicago Title, and appoint Quality Loan Service Corporation a substitute trustee in

their place. The void *ab initio* Substitution of Trustee is recorded in the Clark County Recorder's Office under the Instrument Number 20071015-0002484 and is incorporated herewith as **Exhibit P.**

101.    On June 22, 2010, in furtherance of the conspiracy and to deprive Piovo's, Civil Rights Act of 1866 14 Stat. 27 (1866) a void *ab initio* substitution of trustee dated June 8, 2010 is recorded in Clarks County Recorder's office, where Fidelity National Default Solutions acting on behalf of Bank of America National Association as successor by merger to LaSalle Bank National Association as Trustee for Certificateholders of Bear Sterns Asset Backed Securities I LLC, Asset-Backed Certificates, Series 2006-HE8 by EMC Mortgage Corporation, its Attorney in Fact. The substitution names MERS as "nominee" for Civil Rights Conspirator CBSK as the original Beneficiary and terminates the appointment of the original trustee Chicago Title once <u>again</u>,  and appoints Quality Loan Service Corporation once <u>again</u> as a substitute trustee in its selfsame place. The void *ab initio* Substitution of Trustee is recorded in the Clark County Recorder's Office under the Instrument Number 201006220003252. The recorded substitution is incorporated herewith as **Exhibit Q**.

102.    On April 21, 2012, four years and four months after CBSK ceases to exist by the order of Commissioner of Corporations of The State of California, MERS in violation of Piovo Civil Rights Act of 1866 14 Stat. 27 (1866) MERS "acting" as "nominee" for CBSK, assigns the void *ab initio* Tovar-Guzman's security instrument to the Civil Rights Conspiracy coconspirator U.S. Bank. And in furtherance of the Civil Rights Conspiracy records the said assignment in the Clark County Recorder's Office on May 22, 2012, under the Instrument Number 01205220001298. The assignment is incorporated herewith as **Exhibit R.**

103.    On November 21, 2012, in another violation and deprivation of Piovo's Civil Rights Act

56

of 1866 14 Stat. 27 (1866) another void *ab initio* substitution of trustee dated October 18, 2012 and on November 2, 2012 is recorded in Clarks County Recorder's office, whereas coconspirators and lawyers for MERS - Gerard Cox Larsen purportedly acting as a Trustee on behalf of People's Choice Deed of Trust. The Substitution of Trustee is in the records of the Clark County Recorder's Office under the Instrument Number 201211210001559. The void *ab initio* Substitution of Trustee with its exhibits is incorporated herewith as **Exhibit S**.

104.    Civil Rights Coconspirators MERS and their <u>lawyers</u> GERRARD COX LARSEN (GCL) in furtherance of the Civil Rights conspiracy and in violation of acts constituting past present and future federal acts that necessarily involves GERRARD COX LARSEN in deprivation of Piovo of his Civil Rights Act of 1866 14 Stat. 27 (1866). GCL an attorney firm and specifically Civil Rights Coconspirator Douglas D. Gerrard, an Officer of the Court and a partner of GCL perpetrated a crime of Civil Rights Conspiracy and by causing a document to be filed in the Clark's County Recorder's office wherein claiming to represent People's Choice as Trustee for the People's Choice Deed of Trust and that People's Choice Deed of Trust is still an effective document when in fact People's Choice Deed of Trust is fully satisfied and reconveyed on August 25, 2006 and shows recording in the Clark County Recorder's office on September 9, 2006, under instrument number 20060911-0000020.

105.    The unlawful actions by coconspirator MERS and their agents listed herewith but not limited to, in concert with other Civil Rights Conspiracy coconspirators known and unknown constitute deliberate violations of Plaintiff's Civil Rights Act of 1866 14 Stat. 27 (1866), Civil Rights Identification Document(s) and Information APN, in doing so commits acts violating federal law when illegally and unlawfully participated in the cover up of the transfer of title and transfer of ownership of Piovo's real property.

**Coconspirator U.S. Bank National Association as Trustee**

106.    Plaintiff alleges and incorporate by reference each of the preceding paragraphs as if fully set forth fully herein below.

107.    Coconspirator U.S. Bank a Joint Interest Principals Civil Rights Conspiracy Coconspirators herein, did voluntarily, knowingly, wrongfully, intentionally and inherently wrongfully willfully combine, conspire, and agree with others known and unknown to Piovo, to commit fraud, that is, to devise a scheme, by concert of action of two or more Joint Interest Principals Coconspirators did voluntarily, knowingly, wrongfully, intentionally and inherently wrongfully willfully combine, conspire, and agree with others known and unknown to Piovo, to deprive  Piovo's Property Rights of Citizens, and then subsequent to, with a complete blatant to Piovo egregiously placed Piovo against his will in harm's way by way of theft whereas the Anti Civil Rights Joint Interest Principals Coconspirators the known and unknown defendants stealing of Piovo's property identified as Assessor's Parcel Number 178-17-911-009.

108.    On June 22, 2010, a void *ab initio* substitution of trustee dated June 8, 2010 is recorded in Clarks County Recorder's office, where Fidelity National Default Solutions acting on behalf of Bank of America National Association as successor by merger to LaSalle Bank National Association as Trustee for Certificateholders of Bear Sterns Asset Backed Securities I LLC, Asset-Backed Certificates, Series 2006-HE8 by EMC Mortgage Corporation, its Attorney in Fact.

109.    On April 21, 2012, defendant MERS claiming to be a nominee of defendant CBSK, CBSK license to operate was revoked on November 5, 2007, assigned the fraudulent Tovar-Guzman and void ab initio Deed of Trust to U.S. Bank, the void ab initio assignment of Deed of Trust was recorded on May 22, 2012.

110.    On November 21, 2012, U.S. Bank by and through its legal counsel Gerrard Cox Larsen

recorded Substitution of Trustee naming Gerrard Cox Larsen as Trustee under the void ab initio defendant Tovar-Guzman Deed of Trust.

111.    On September 12, 2013, Plaintiff sends a Notice of Lis Pendens notifying U.S. Bank of the impending lawsuit, the Notice of Lis Pendens is filed in the records of Clark County Recorder's Office as Instrument No. 201309120000172.

112.    On October 21, 2013, Plaintiff files his initial Complaint naming *inter alia* U.S. Bank as defendant. Federal case Number 2:13-CV-01922-APG-GWF.

113.    On November 10, 2013, U.S. Bank was served with the Summons and Complaint.

114.    On November 13, 2013, U.S. Bank issued and recorded Notice of Trustee Sale which was recorded in Clark County under Instrument No. 201311140001094. The Notice is incorporated herewith as **Exhibit T**.

115.    On December 6, 2013, U.S. Bank filed Motion to Dismiss being fully aware of the verified Complaint made by Plaintiff yet continued to be part of the Civil Rights Conspiracy and continued to deprive Plaintiff's Civil Rights.

116.    On January 10, 2014, Civil Rights Coconspirator U.S. Bank voluntarily, knowingly, wrongfully, intentionally and inherently wrongfully willfully combine, conspire, and agree with others known and unknown to Piovo, to commit fraud, that is, to devise a scheme, by concert of action of two or more Joint Interest Principals Coconspirators did voluntarily, knowingly, wrongfully, intentionally and inherently wrongfully willfully combine, conspire, and agree with others known and unknown to Piovo, in a blatant depravation of Plaintiff's Civil Rights U.S. Bank records new Trustee's Deed Upon Sale claiming to have purchased Plaintiff's property for $400,000 at Trustee sale. The U.S. Bank Trustee's Deed Upon Sale is recorded in Clarks County Recorder's Office under Instruments No. 201401100002534 depriving Plaintiff of his Civil

Rights Protection offered by the APN under which the Government has offered the benefit.

Trustee's Deed Upon Sale is incorporated herewith as **Exhibit U.**

117.    The U.S. District court litigation continues until March   ,2105, where it was dismissed for lack of jurisdiction,

118.    The case is in process of being appealed with the 9th Circuit court of Appeals. Case Number 15-15650.

119.    On December 2, 2015, Coconspirator U.S. Bank continues to commit fraud by filing an Unlawful Detainer action in the Henderson Justice Court in pleading fraudulent jurisdictional facts. U.S. Bank is aware of the facts in Piovo Civil Rights complaint and the fact that Tovar-Guzman is not local defendant and never was such. U.S. Bank has committed fraud upon the court by claiming that Tovar-Guzman is a tenant and occupies the property located at 1853 Indian Bend Drive, Henderson, Nevada. U.S. Bank knows from being named defendant in the case mentioned above that Tovar-Guzman has admitted in her own sworn under oath statement that she acted as a straw buyer to steal Piovo's property. In addition, a nonparty in the Henderson Justice court case and a codefendant in Piovo's Civil Rights complaint mentioned above Ronald Colquitt admitted under oath in his sworn statement that he and the lenders as wells as Chicago Title participated in theft of Piovo's property in violation of Piovo's Civil Rights Act of 1866. 14 Stat. 27.

120.    U.S. Bank commits fraud and fraud upon the court in pleading fraudulent jurisdictional facts and commits fraud upon the court by misrepresenting to the court that Tovar-Guzman is a non diverse local defendant in possession of the property where in fact U.S. Bank knows that Tovar-Guzman is a resident of the state of California and has never seen Piovo's property and doesn't know where it is. Tovar-Guzman can be disregarded by the court under the fraudulent-

joinder doctrine. U.S. Bank knowingly and fraudulently pleads in Henderson Justice court that defendant Tovar-Guzman is a citizen of the state where the suit is filed even though Tovar-Guzman is in fact a citizen of a different state.

121.   U.S. Bank commits fraud in pleading jurisdictional facts and commits fraud upon the Henderson Justice court by misrepresenting to the court that a fictitious name defendant ROBERT J. STONE SR. is a non diverse local defendant in possession of the property where in fact U.S. Bank knows that ROBERT STONE is convicted felon and is serving time of probation and is a resident of the state of Utah and was directly participating with others and U.S. Bank in theft of Piovo's property. ROBERT J. STONE SR. can be disregarded by the court under the fraudulent-joinder doctrine and as not having any real connection to claims of nondiverse or local defendant. U.S. Bank knowingly and fraudulently pleads that defendant ROBERT J. STONE SR. is a citizen of the state where the suit is filed, is a tenant, is in possession and occupies the property where U.S. Bank knows that ROBERT J. STONE SR. is in fact a phantom and an unknown party _with no connection to the controversy_.

122.   Coconspirator U.S. Bank, intentionally failed to name Piovo as defendant in the Unlawful Detainer action in Henderson Justice Court so it would not have to serve Piovo with the summons and complaint as being named DOE OCCUPANT.

123.   Coconspirator U.S. Bank, voluntarily, knowingly, wrongfully, intentionally and inherently wrongfully willfully combine, conspire to intentionally not name Piovo in its Unlawful Detainer Action even though U.S. Bank knows full well who Piovo is and the fact that Piovo that occupies the property yet with full knowledge U.S. Bank intentionally fails to serve the Unlawful Detainer complaint upon Piovo and fraudulent means by misleading the Henderson Justice court obtains an order to serve by publication as if Piovo does not exist.

124.    On February 3, 2016, Coconspirator U.S. Bank obtained a "Temporary Writ of Restitution" after having ex-parte hearing fraudulently misleading the Henderson Justice Court and fails to serve the Temporary Writ of Restitution upon Piovo and by fraudulent means directs the Henderson Constable to execute the Writ of Restitution as if Piovo does not exist.

125.    On March 2, 2016, Coconspirator U.S. Bank directed the Henderson Constable to execute the Temporary Writ of Restitution and on or about 10:00A.M. the same day the Henderson Constable showed up with police force in front of Piovo's property and attempted to remove the lock and displace Piovo and his wife onto the street.

126.    Piovo informed the Constable that the case was removed to Federal court 10 minutes before and that he is unable to proceed with eviction. It was Piovo's luck that the Constable was a reasonable man and withdrew its action.

127.    Coconspirator U.S. Bank, did on the dates listed above but not limited to, voluntarily, knowingly, wrongfully, intentionally and inherently wrongfully willfully combine, conspire, and agree with others known and unknown to Piovo, to commit fraud, that is, to devise a scheme, by concert of action of two or more Joint Interest Principals Coconspirators did voluntarily, knowingly, wrongfully, intentionally and inherently wrongfully willfully combine, conspire, and agree with others known and unknown to Piovo, to deprive  Piovo of Property Rights of Citizens, and then subsequent to did voluntarily, knowingly, wrongfully, intentionally and with inherently wrongful consciousness with a complete blatant disregard to Piovo's Civil Rights egregiously placed Piovo against his will in harm's way by way of theft, and such deprivation is: in direct violation of Piovo's free flowing, under equal protection under the laws of the United States the Civil Rights Act of 1866 14 STAT. 27 (1866).

128.    U.S. Bank's actions automatically causes the deprivation of Piovo's free flowing, under

equal protection under the Civil Rights Act of 1866 14 STAT. 27 (1866), the indissoluble Civil Rights Equal Protection under the law, wherein coconspirators' oneness intent links each act and laws to one another, by an inseparable Civil Rights act of necessity that by their indisputable least common denominator, whereas Piovo's Equal Protection Under the Law, necessarily attaches each their Civil Rights Equal Protection Under The Law to Piovo, instilled with every privilege of freeborn citizens, to his free flowing Civil Rights Property Rights of Citizens, in that the APN being the one and only Civil Rights Acts Identification Document and information Piovo's Civil Rights Identification Document(s) and Information with the intent to in furtherance the theft thereof by concert of action of two or more Joint Interest Principals Coconspirators cause to steal Piovo's Real property indissoluble where such acts link themselves to (1) Joseph Eugene Piovo, (2) Civil Rights Act of 1866 14 Stat. 27 (1866), thus being the case as the case is all Joint Interest Principals Coconspirators Civil Rights Conspiracy by concert of action did knowingly and willfully combine, conspire, and agree with others known and unknown to Joseph Eugene Piovo, deprive him of his Civil Rights flowing under Fourteenth Amendment to the United States Constitution equal protection under the Constitution and laws and treaties of the United States.

129.    Coconspirator U.S. Bank claims an interest in Plaintiff's property by an allegedly acquired all Trust business from Bank of America N.A.

130.    Accordingly, U.S. Bank acquired nothing from MERS on April 21, 2012, because MERS did not hold lawful interest in Plaintiff's Property.

131.    The unlawful actions by Civil Rights Coconspirator U.S. Bank and their agents listed herewith but not limited to, in concert with other Civil Rights Conspiracy Coconspirators known and unknown constitute deliberate violations of Piovo's Civil Rights Act of 1866 14 Stat. 27 (1866) which are indissoluble Civil Rights under Equal Protection under the law.

**Coconspirator Aldridge Pite, LLP**

132.    Plaintiff alleges and incorporate by reference each of the preceding paragraphs as if fully set forth fully herein below.

133.    On December 2, 2015, Coconspirator Aldridge Pite in concert with U.S. Bank commits fraud upon Piovo by filing an Unlawful Detainer action in the Henderson Justice Court and in pleading fraudulent jurisdictional facts. Aldridge Pite and U.S. Bank are aware of the facts in Piovo Civil Rights complaint and the fact that Tovar-Guzman is not local defendant and never was such. U.S. Bank has committed fraud upon the court by claiming that Tovar-Guzman is a tenant and occupies the property located at 1853 Indian Bend Drive, Henderson, Nevada. Aldridge Pite and U.S. Bank know from U.S. Bank being named defendant in the case mentioned above that Tovar-Guzman has admitted in her own sworn under oath statement that she acted as a straw buyer to steal Piovo's property. In addition, a nonparty in the Henderson Justice court case and a codefendant in Piovo's Civil Rights complaint mentioned above Ronald Colquitt admitted under oath in his sworn statement that he and the lenders as wells as Chicago Title participated in theft of Piovo's property in violation of Piovo's Civil Rights Act of 1866. 14 Stat. 27.

134.    Aldridge Pite in concert with U.S. Bank commits fraud and fraud upon the court in pleading fraudulent jurisdictional facts and commits fraud upon the court by misrepresenting to the court that Tovar-Guzman is a non diverse local defendant in possession of the property where in fact Aldridge Pite and U.S. Bank know that Tovar-Guzman is a resident of the state of California and has never seen Piovo's property and doesn't know where it is. Tovar-Guzman can be disregarded by the court under the fraudulent-joinder doctrine. Aldridge Pite and U.S. Bank knowingly and fraudulently plead in Henderson Justice court that defendant Tovar-Guzman is a citizen of the state where the suit is filed even though Tovar-Guzman is in fact a citizen of a

different state.

135.    Aldridge Pite and U.S. Bank commit fraud in pleading jurisdictional facts and commit fraud upon Piovo and the Henderson Justice court by misrepresenting to the court that a fictitious name defendant ROBERT J. STONE SR. is a non diverse local defendant in possession of the property where in fact U.S. Bank knows that ROBERT STONE is convicted felon and is serving time of probation and is a resident of the state of Utah and was directly participating with others and U.S. Bank in theft of Piovo's property. ROBERT J. STONE SR. can be disregarded by the court under the fraudulent-joinder doctrine and as not having any real connection to claims of nondiverse or local defendant. Aldridge Pite and U.S. Bank knowingly and fraudulently plead that defendant ROBERT J. STONE SR. is a citizen of the state where the suit is filed, is a tenant, is in possession and occupies the property where U.S. Bank knows that ROBERT J. STONE SR. is in fact a phantom and an unknown party *with no connection to the controversy*.

136.    Coconspirator Aldridge Pite  and U.S. Bank, voluntarily, knowingly, wrongfully, intentionally and inherently wrongfully willfully combine, conspire to intentionally not name Piovo in its Unlawful Detainer Action even though U.S. Bank knows full well who Piovo is and the fact that Piovo that occupies the property yet with full knowledge U.S. Bank intentionally fails to serve the Unlawful Detainer complaint upon Piovo and fraudulent means by misleading the Henderson Justice court obtains an order to serve by publication as if Piovo does not exist.

137.    On February 3, 2016, Coconspirator Aldridge Pite and U.S. Bank obtained a "Temporary Writ of Restitution" after having ex-parte hearing fraudulently misleading the Henderson Justice Court and intentionally fail to serve the Temporary Writ of Restitution upon Piovo and by fraudulent means direct the Henderson Constable to execute the Writ of Restitution as if Piovo does not exist.

138.   On March 2, 2016, Coconspirator Aldridge Pite and U.S. Bank in concert of action direct the Henderson Constable to execute the Temporary Writ of Restitution and on or about 10:00A.M. the same day the Henderson Constable showed up with police force in front of Piovo's property and attempted to remove the lock and displace Piovo and his wife onto the street.

139.   Coconspirator Aldridge Pite and U.S. Bank, did on the dates listed above but not limited to, voluntarily, knowingly, wrongfully, intentionally and inherently wrongfully willfully combine, conspire, and agree with others known and unknown to Piovo, to commit fraud, that is, to devise a scheme, by concert of action of two or more Joint Interest Principals Coconspirators did voluntarily, knowingly, wrongfully, intentionally and inherently wrongfully willfully combine, conspire, and agree with others known and unknown to Piovo, to deprive  Piovo of Property Rights of Citizens, and then subsequent to did voluntarily, knowingly, wrongfully, intentionally and with inherently wrongful consciousness with a complete blatant disregard to Piovo's Civil Rights egregiously placed Piovo against his will in harm's way by way of theft, and such deprivation is: in direct violation of Piovo's free flowing, under equal protection under the laws of the United States the Civil Rights Act of 1866 14 STAT. 27 (1866).

140.   Coconspirators' Aldridge Pite and U.S. Bank's actions automatically cause the deprivation of Piovo's free flowing, under equal protection under the Civil Rights Act of 1866 14 STAT. 27 (1866), the indissoluble Civil Rights Equal Protection under the law, wherein coconspirators' oneness intent links each act and laws to one another, by an inseparable Civil Rights act of necessity that by their indisputable least common denominator, whereas Piovo's Equal Protection Under the Law, necessarily attaches each their Civil Rights Equal Protection Under The Law to Piovo, instilled with every privilege of freeborn citizens, to his free flowing Civil Rights Property Rights of Citizens, in that the APN being the one and only Civil Rights Acts Identification

Document and information Piovo's Civil Rights Identification Document(s) and Information with the intent to in furtherance the theft thereof by concert of action of two or more Joint Interest Principals Coconspirators cause to steal Piovo's Real property indissoluble where such acts link themselves to (1) Joseph Eugene Piovo, (2) Civil Rights Act of 1866 14 Stat. 27 (1866), thus being the case as the case is all Joint Interest Principals Coconspirators Civil Rights Conspiracy by concert of action did knowingly and willfully combine, conspire, and agree with others known and unknown to Joseph Eugene Piovo, deprive him of his Civil Rights flowing under Fourteenth Amendment to the United States Constitution equal protection under the Constitution and laws and treaties of the United States.

**Coconspirator REBECCA P. KERN**

141.    Plaintiff alleges and incorporate by reference each of the preceding paragraphs as if fully set forth fully herein below.

142.    On December 2, 2015, Coconspirator Rebecca P. Kern an attorney representing U.S. Bank in concert with U.S. Bank commits fraud upon Piovo by filing a <u>Verified</u> Complaint for Unlawful Detainer in the Henderson Justice Court and in pleading fraudulent jurisdictional facts. Rebecca P. Kern and U.S. Bank are aware of the facts in Piovo Civil Rights complaint and the fact that Tovar-Guzman is not local defendant and never was such. U.S. Bank has committed fraud upon the court by claiming that Tovar-Guzman is a tenant and occupies the property located at 1853 Indian Bend Drive, Henderson, Nevada. Rebecca P. Kern and U.S. Bank know from U.S. Bank being named defendant in the case mentioned above that Tovar-Guzman has admitted in her own sworn under oath statement that she acted as a straw buyer to steal Piovo's property. In addition, a nonparty in the Henderson Justice court case and a codefendant in Piovo's Civil Rights complaint mentioned above Ronald Colquitt admitted under oath in his sworn statement that he

and the lenders as wells as Chicago Title participated in theft of Piovo's property in violation of Piovo's Civil Rights Act of 1866. 14 Stat. 27.

143.    Rebecca P. Kern in concert with U.S. Bank commits fraud and commits perjury **under oath** and fraud upon the court in pleading fraudulent jurisdictional facts and commits fraud upon the court by misrepresenting to the court that Tovar-Guzman is a non diverse local defendant in possession of the property where in fact Rebecca P. Kern and U.S. Bank know that Tovar-Guzman is a resident of the state of California and has never seen Piovo's property and doesn't know where it is. Tovar-Guzman can be disregarded by the court under the fraudulent-joinder doctrine. Rebecca P. Kern and U.S. Bank knowingly and fraudulently plead in Henderson Justice court that defendant Tovar-Guzman is a citizen of the state where the suit is filed even though Tovar-Guzman is in fact a citizen of a different state.

144.    Rebecca P. Kern and U.S. Bank commit fraud in pleading jurisdictional facts and commit fraud upon Piovo and the Henderson Justice court by misrepresenting to the court that a fictitious name defendant ROBERT J. STONE SR. is a non diverse local defendant in possession of the property where in fact U.S. Bank knows that ROBERT STONE is convicted felon and is serving time of probation and is a resident of the state of Utah and was directly participating with others and U.S. Bank in theft of Piovo's property. ROBERT J. STONE SR. can be disregarded by the court under the fraudulent-joinder doctrine and as not having any real connection to claims of nondiverse or local defendant. Rebecca P. Kern and U.S. Bank knowingly and fraudulently plead that defendant ROBERT J. STONE SR. is a citizen of the state where the suit is filed, is a tenant, is in possession and occupies the property where U.S. Bank knows that ROBERT J. STONE SR. is in fact a phantom and an unknown party *with no connection to the controversy*.

145.    Coconspirator Rebecca P. Kern  and U.S. Bank, voluntarily, knowingly, wrongfully,

68

intentionally and inherently wrongfully willfully combine, conspire to intentionally not name Piovo in its Unlawful Detainer Action even though U.S. Bank knows full well who Piovo is and the fact that Piovo that occupies the property yet with full knowledge U.S. Bank intentionally fails to serve the Unlawful Detainer complaint upon Piovo and fraudulent means by misleading the Henderson Justice court obtains an order to serve by publication as if Piovo does not exist.

146.    On February 3, 2016, Coconspirator Rebecca P. Kern and U.S. Bank obtained a "Temporary Writ of Restitution" after having ex-parte hearing fraudulently misleading the Henderson Justice Court and intentionally fail to serve the Temporary Writ of Restitution upon Piovo and by fraudulent means direct the Henderson Constable to execute the Writ of Restitution as if Piovo does not exist.

147.    On March 2, 2016, Coconspirator Rebecca P. Kern and U.S. Bank in concert of action direct the Henderson Constable to execute the Temporary Writ of Restitution and on or about 10:00A.M. the same day the Henderson Constable showed up with police force in front of Piovo's property and attempted to remove the lock and displace Piovo and his wife onto the street.

148.    Coconspirator Rebecca P. Kern and U.S. Bank, did on the dates listed above but not limited to, voluntarily, knowingly, wrongfully, intentionally and inherently wrongfully willfully combine, conspire, and agree with others known and unknown to Piovo, to commit fraud, that is, to devise a scheme, by concert of action of two or more Joint Interest Principals Coconspirators did voluntarily, knowingly, wrongfully, intentionally and inherently wrongfully willfully combine, conspire, and agree with others known and unknown to Piovo, to deprive  Piovo of Property Rights of Citizens, and then subsequent to did voluntarily, knowingly, wrongfully, intentionally and with inherently wrongful consciousness with a complete blatant disregard to Piovo's Civil Rights egregiously placed Piovo against his will in harm's way by way of theft, and

69

such deprivation is: in direct violation of Piovo's free flowing, under equal protection under the laws of the United States the Civil Rights Act of 1866 14 STAT. 27 (1866).

149.    Coconspirators' Rebecca P. Kern and U.S. Bank's actions automatically cause the deprivation of Piovo's free flowing, under equal protection under the Civil Rights Act of 1866 14 STAT. 27 (1866), the indissoluble Civil Rights Equal Protection under the law, wherein coconspirators' oneness intent links each act and laws to one another, by an inseparable Civil Rights act of necessity that by their indisputable least common denominator, whereas Piovo's Equal Protection Under the Law, necessarily attaches each their Civil Rights Equal Protection Under The Law to Piovo, instilled with every privilege of freeborn citizens, to his free flowing Civil Rights Property Rights of Citizens, in that the APN being the one and only Civil Rights Act's Identification Document and Information Piovo's Civil Rights Document(s) and Information with the intent and in the course of and in furtherance the aim of the joint interest conspiracy against rights by theft thereof by concert of action of two or more Joint Interest Principals Coconspirators cause to steal Piovo's Real property indissoluble where such acts link themselves to (1) Joseph Eugene Piovo, (2) Civil Rights Act of 1866 14 Stat. 27 (1866), thus being the case as the case is all Joint Interest Principals Coconspirators Civil Rights Conspiracy by concert of action did knowingly and willfully combine, conspire, and agree with others known and unknown to Joseph Eugene Piovo, deprive him of his Civil Rights flowing under Fourteenth Amendment to the United States Constitution equal protection under the Constitution and laws and treaties of the United States.

## CAUSE OF ACTION

### Violations of Civil Rights Civil Rights Act of 1866 14 Stat. 27 (1866)

150.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

151.    Plaintiff seeks relief against all named and unnamed Civil Rights Conspiracy Coconspirators and other coconspirators for violations under Civil Rights Act of 1866 14 Stat. 27 (1866)

152.    As set forth above during the Civil Rights Conspiracy whereas coconspirators with sufficient intent in the course of and in furtherance thereof to advance the aim of the joint interest conspiracy against rights in concert with other Civil Rights Conspiracy Coconspirators known and unknown constitute deliberate violations of Plaintiff's Civil Rights Act of 1866 14 Stat. 27 (1866) in doing so the conspirators commit acts violating federal law when illegally and unlawfully transfer APN, transfer title and transfer ownership of Vice Roy Blind Trust/Piovo's real property resulting in deprivation of Piovo's Civil Rights Act of 1866 14 Stat. 27 (1866).

153.    By reason of the foregoing, Plaintiff has been damaged in a substantial amount to be determined at trial, and is entitled to compensatory, actual and punitive damages for Joseph Eugene Piovo's Heart Attack, for almost successful attempt to throw Piovo onto the street in deprivation of Piovo's Civil Rights as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property inter alia and et al emotional stress in the amount of Fifty Million Dollars ($50,000,000.00) and to Revoke the licenses of the Civil Rights Conspiracy Against Rights Coconspirator Endorsement Lenders and Civil Rights Conspiracy Coconspirator Title Company, Civil Rights Conspiracy Coconspirator attorney Colquitt's, and all other Civil Rights Conspiracy Against Rights Coconspirator attorneys who voluntarily intelligently and willfully joined in the unlawful Civil Rights Conspiracy Against Rights Coconspirators agreement to commit acts constituting federal Civil Rights Conspiracy violations

against Joseph Eugene Piovo constituting federal  Civil Rights Conspiracy violations with a blatant wrongful and inherently wrongful disregards for Civil Rights afforded to Joseph Eugene Piovo.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against all Civil Rights coconspirators and defendants as follows:

      a.   For return of Plaintiff's Civil Rights.

      b.   For return of Plaintiffs Real Property;

      c.   For Compensatory damages;

      d.   For Punitive damages;

      e.   For Actual damages;

      f.   For Emotional distress;

      g.   For the Suffering, the Heart Attack and the Costs Incurred as a Result;

      h.   For Legal Fees, Court Costs;

      i.   For Revocation of all Licenses of all Civil Rights conspirators.

Respectfully submitted by:

Dated this 8th day of March, 2016.

Joseph Eugene Piovo
1853 Indian Bend Drive
Henderson, Nevada 89074
702-897-2602
viceroyuncci@gmail.com

20051114-0005356

Fee: $16.00        RPTT: $3,980.55
N/C Fee: $0.00

11/14/2005              16:39:11
T20050206999
**Requestor:**
   VICEROY TRUST

Frances Deane                    CDO
Clark County Recorder      Pgs: 3

APN: *178-17-811-009*
Recording requested by and mail documents and
tax statements to:

Name: *Viceroy Trust*
Address: *320 Warm Spring su#1A*
City/State/Zip: *Las Vegas, NV 89119*

DED106mk
Nevada Legal Forms & Books, Inc. (702) 870-8977
www.legalformsrus.com

RPTT: ____  **GRANT, BARGAIN, and SALE DEED**

THIS INDENTURE WITNESS that: *Robert J. Stone Jr.*
*Unmarried man, as sole and separate property*
(hereinafter called GRANTOR(S)) in consideration of *ten dollars*
dollars $ *10.00* ____, the receipt of which is hereby acknowledged, do hereby GRANT,
BARGAIN, SALE and CONVEY to: *Vice Roy United Nations Credit*
*and Commerce International Blind Trust*
(hereinafter called GRANTEE(S)) all that real property situated in the City of *Henderson*
County of *Clark*          , State of *Nevada*

bounded and described as follows: (Set forth legal description and commonly known address)
*1853 Indian Bend, Henderson, NV 89074*
*Parcel #178-17-811-009, Legacy Highlands*
*Plat Book 48 Page 18 Lot Block APT*
*SW4 NE4 Sec 17 TWP 22 RGN 62*
*Page 955 GRID EG.*

WARNING: THE COUNTY RECORDER MAY CHARGE AN ADDITIONAL FEE IF YOU
WRITE WITHIN THE 1" MARGINS OF THIS DOCUMENT OR VIOLATE ANY OTHER
RECORDING REQUIREMENTS IMPOSED BY YOUR COUNTY RECORDER.

Grant, Bargain, and Sale Deed          Page 1 of 2          Initials *RS*

**Exhibit A**

Together with all and singular hereditament and appurtenances thereunto belonging or in any way appertaining to.

In Witness Whereof, I/We have hereunto set my hand/our hands on 3 day of November 2005.

_Robert J Stone Jr_
_____
Signature of Grantor

ROBERT J STONE
_____
Print or Type Name Here

_____
Signature of Grantor

_____
Print or Type Name Here

STATE OF                    )
COUNTY OF                   )

On this 3 1 day of November , 2005 , personally appeared before me, a Notary Public Robert B Stone Jr personally known to me to be the person(s) whose name(e) is subscribed to the above instrument who acknowledged that ___he___ executed this instrument. Witness my hand and official seal.

_____
Notary Public

My commission expires: March 26, 2006

Consult an attorney if you doubt this forms fitness for your purpose.

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
JEAN G. MARRIMON
No: 02-75230-1
My Appointment Expires March 26, 2006

Grant, Bargain, and Sale Deed          Page 2 of 2          Initials RS

Exhibit A

STATE OF NEVADA
DECLARATION OF VALUE FORM

1. Assessor Parcel Number(s)
   a) 178-17-811-009
   b) _____
   c) _____
   d) _____

2. Type of Property:
   a) ☐ Vacant Land        b) ☑ Single Fam. Res.
   c) ☐ Condo/Twnhse       d) ☑ 2-4 Plex
   e) ☐ Apt. Bldg          f) ☐ Comm'l/Ind'l
   g) ☐ Agricultural       h) ☐ Mobile Home
   ☐ Other _____

   FOR RECORDER'S OPTIONAL USE ONLY
   Book:_____ Page:_____
   Date of Recording:_____
   Notes:

3. Total Value/Sales Price of Property                              $ 780,001
   Deed in Lieu of Foreclosure Only (value of property)             ( _____ )
   Transfer Tax Value:                                              $ _____
   Real Property Transfer Tax Due                                   $ 3980.55

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section _____
   b. Explain Reason for Exemption: _____

5. Partial Interest: Percentage being transferred: _____ %

   The undersigned declares and acknowledges, under penalty of perjury, pursuant to
NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their
information and belief, and can be supported by documentation if called upon to substantiate the
information provided herein. Furthermore, the parties agree that disallowance of any claimed
exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax
due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be
jointly and severally liable for any additional amount owed.

Signature _____        Capacity  Owner

Signature _____        Capacity _____

| SELLER (GRANTOR) INFORMATION (REQUIRED) | BUYER (GRANTEE) INFORMATION (REQUIRED) |
|---|---|
| Print Name: Robert J Stone JR | Print Name: Viceroy ct |
| Address: 1853 Indian Bend | Address: 320 - Warm Springs |
| City: Henderson | City: Las Vegas |
| State: NV  Zip: 89074 | State: NV   Zip: 89119 |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
Print Name: _____        Escrow #: _____
Address: _____
City: _____              State: _____ Zip: _____

**AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED**

┌─────────────────┐
│    **Exhibit A**    │
└─────────────────┘



1   GREGORY A. BROWER
      United States Attorney
2   JEFFREY T. TAO
      Assistant United States Attorney
3   333 Las Vegas Blvd., S., Suite 5000
      Las Vegas, Nevada 89101
4   (702) 388-6050

5

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
## -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL INFORMATION |
|               PLAINTIFF, | 2:09-CR-216-JCM |
| | CASE NO.  2:08-cr-_____ |
| v. | VIOLATION: |
| ROBERT STONE, | 18 U.S.C. § 371 - Conspiracy |
|               DEFENDANT. | |

**THE UNITED STATES ATTORNEY FOR THE DISTRICT OF NEVADA CHARGES THAT:**

### COUNT ONE
Conspiracy

1.     From in or about January 2004, to in on or about August 2007, in the Federal District of Nevada and elsewhere,

**ROBERT STONE,**

the defendant herein, did knowingly and willfully combine, conspire, and agree with others known and unknown to the grand jury to commit Bank Fraud, that is, to devise a scheme and artifice to defraud and to obtain money and property under the custody and control of federally-insured financial institutions, by means of false and fraudulent pretenses, representations and promises that would cause a bank to part with money and property, in violation of Title 18, United States Code, Section 1344.

**Exhibit B**

<u>The Object of the Conspiracy</u>

2.   The object of the conspiracy was for the defendant and others to obtain money and property by fraudulently obtaining mortgages through strawbuyers to purchase houses in Nevada. A "straw buyer" is an individual who allows residential real estate ("property" or "properties") to be purchased in his or her name to enable an unidentified person to buy a house.

<u>Manner and Means</u>

3.   The manner and means by which the defendant and others accomplished the objectives of the conspiracy include, but are not limited to, the following:

   a.   **STONE** and his coconspirators recruited people to be straw buyers.

   b.   **STONE** and his coconspirators completed mortgage loan applications and related documents for straw buyers with materially false and fraudulent information, including but not limited to the straw buyers' assets, places of employment, income, and intent to live in the house.

   c.   **STONE** and his coconspirators created, and caused to be created, fictitious documents, including bank statements, pay stubs and verifications of rent and mortgage, which were included in loan packages that were submitted to financial institutions.

   d.   **STONE** and his coconspirators profited from the fraudulent mortgage loan transactions by taking proceeds of the loans for themselves. Among other ways, conspirators arranged for multiple fraudulent purchases of the same property in a short period of time to inflate the purchase price.

<u>Overt Acts</u>

4.   In order to achieve the objectives of the conspiracy, at least one member of the conspiracy committed and attempted to commit overt acts, including but not limited to the following:

<u>The Property at 4054 Syracuse Dr., Las Vegas, NV</u>

   a.   A coconspirator recruited Margaret Stone to be a strawbuyer for a house at 4054 Syracuse Dr., Las Vegas, NV.

2

**Exhibit B**

1                b.     Coconspirators created a materially false and fraudulent loan application

2 for Margaret Stone's purchase of the house.

3                c.     Coconspirators created and caused to be created materially false

4 and fraudulent documents, including bank statements, pay stubs and verifications of rent and

5 mortgage, which were included in loan packages that were submitted to financial institutions.

6                d.     In or around March 2004, coconspirators submitted and caused to be

7 submitted the loan application and false supporting documents, to First Franklin Financial, a federally-

8 insured financial institution.

9          <u>The Property at 7639 Rafter Ct., Las Vegas, NV</u>

10               e.     A coconspirator recruited Kenneth Price to be a strawbuyer for a house

11 at 7639 Rafter Ct., Las Vegas, NV.

12               f.     Coconspirators created a materially false and fraudulent loan application

13 for Price's purchase of the house.

14               g.     Coconspirators created and caused to be created materially false

15 and fraudulent documents, including bank statements, pay stubs and verifications of rent and

16 mortgage, which were included in loan packages that were submitted to financial institutions.

17               h.     In or around August 2006, coconspirators submitted and caused to be

18 submitted the loan application and false supporting documents, to First Franklin Financial, a federally-

19 insured financial institution.

20               i.     **STONE** and his coconspirators caused financial institutions to lose

21 between $400,000 and $1,000,000 from the fraudulent transactions at 4054 Syracuse Dr., Las Vegas,

22 NV, and 7639 Rafter Ct., Las Vegas, NV.

23       All in violation of Title 18, United States Code, Section 371.

24 ///

25 ///

26 ///

3

**Exhibit B**

## FORFEITURE ALLEGATION ONE
(Conspiracy to commit Bank Fraud)

1.    The allegations of Count One of this Information are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to the provision of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.    Upon a conviction of the felony offense charged in Count One of this Information,

**ROBERT STONE,**

defendant herein, shall forfeit to the United States of America, any property, constituting or derived from, proceeds traceable to violations of Title 18, United States Code, Section 1344, a "specified unlawful activity" as defined in 18 U.S.C. §1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offense up to $1,000,000.00 in United States Currency.

3.    If any property being subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant –

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been place beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property that cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any properties of the defendant up to $1,000,000.00 in United States Currency.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 1344, a "specified unlawful activity" as

4

**Exhibit B**

1 | defined in Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1)(B); and Title 21, United

2 | States Code, Section 853.

3 | ### FORFEITURE ALLEGATION TWO
(Conspiracy to commit Bank Fraud)

4 |

5 |      1.        The allegations of Count One of this Information are hereby realleged and

6 | incorporated herein by reference for the purpose of alleging forfeiture pursuant to the provision of

7 | Title 18, United States Code, Section 981(a)(1)(C); and Title 28, United States Code, Section 2461(c).

8 |      2.        Upon a conviction of the felony offense charged in Count One of this

9 | Information,

10 |                   **ROBERT STONE,**

11 | defendant herein, shall forfeit to the United States of America, any property constituting, or derived

12 | from, proceeds traceable to violations of Title 18, United States Code, Section 1344, or a conspiracy

13 | to commit such offense, up to $1,000,000.00 in United States Currency.

14 |      3.        If any property being subject to forfeiture pursuant to Title 18, United States

15 | Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act

16 | or omission of the defendant --

17 |            a.    cannot be located upon the exercise of due diligence;

18 |            b.    has been transferred or sold to, or deposited with, a third party;

19 |            c.    has been place beyond the jurisdiction of the court;

20 |            d.    has been substantially diminished in value; or

21 |            e.    has been commingled with other property that cannot be divided without

22 |                difficulty;

23 | it is the intent of the United States of America to seek forfeiture of any properties of the defendant up

24 | to $1,000,000.00 in United States Currency.

25 | . . .

26 | . . .

5

### Exhibit B

All pursuant to Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 1344; and Title 21, United States Code, Section 853.

## FORFEITURE ALLEGATION THREE
### (Conspiracy to commit Bank Fraud)

1.          The allegations of Count One of this Information are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to the provision of Title 18, United States Code, Section 982(a)(2).

2.          Upon a conviction of the felony offense charged in Count One of this Information,

**ROBERT STONE,**

defendant herein, shall forfeit to the United States of America, any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of violations of, or a conspiracy to violate Title 18, United States Code, Section 1344, up to $1,000,000.00 in United States Currency.

3.          If any property being subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(2), as a result of any act or omission of the defendant --

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been place beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property that cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any properties of the defendant up to $1,000,000.00 in United States Currency.

All pursuant to Title 18, United States Code, Section 982(a)(2); Title 18, United States Code, Section 1344; and Title 21, United States Code, Section 853.

6

**Exhibit B**

1       **DATED**: this ___4 th___ day of June 2009.

2

3   GREGORY A. BROWER
  United States Attorney

4

5

6   JEFFREY T. TAO
  Assistant United States Attorney

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Exhibit B**

10/7/13                         Business Search - Business Entities - Business Programs



California Secretary of State Debra Bowen

Secretary of State    Administration    Elections    **Business Programs**    Political Reform    Archives    Registries

**Business Entities (BE)**

Online Services
- E-File Statements of
  Information for
  Corporations
- Business Search
- Processing Times
- Disclosure Search

Main Page

Service Options

Name Availability

Forms, Samples & Fees

Statements of Information
(annual/biennial reports)

Filing Tips

Information Requests
(certificates, copies &
status reports)

Service of Process

FAQs

Contact Information

Resources
- Business Resources
- Tax Information
- Starting A Business

Customer Alerts
- Business Identity Theft
- Misleading Business
  Solicitations

## Business Entity Detail

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Friday, October 4, 2013. Please refer to Processing Times for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

| | |
|---|---|
| Entity Name: | CBSK FINANCIAL GROUP, INC. |
| Entity Number: | C1737791 |
| Date Filed: | 01/21/1994 |
| Status: | SUSPENDED |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 17991 COWAN |
| Entity City, State, Zip: | IRVINE CA 92614 |
| Agent for Service of Process: | ** RESIGNED ON 08/16/2007 |
| Agent Address: | * |
| Agent City, State, Zip: | * |

* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code section 2114 for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to Name Availability.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to Information Requests.
- For help with searching an entity name, refer to Search Tips.
- For descriptions of the various fields and status types, refer to Field Descriptions and Status Definitions.

Modify Search    New Search    Printer Friendly    Back to Search Results

Privacy Statement | Free Document Readers
Copyright © 2013   California Secretary of State

Exhibit C

1  PRESTON DUFAUCHARD
   CALIFORNIA CORPORATIONS COMMISSIONER
2  ALAN S. WEINGER (CA BAR NO. 86717)
   SUPERVISING COUNSEL
3  320 WEST 4th Street, Ste. 750
   LOS ANGELES, CALIFORNIA 90013-1105
4
5  Attorneys for Complainant

6                    BEFORE THE DEPARTMENT OF CORPORATIONS

7                          OF THE STATE OF CALIFORNIA

8

9  In the Matter of the Accusation of THE        )   File No. 413 0306
   COMMISSIONER OF CORPORATIONS OF               )
10 THE STATE OF CALIFORNIA,                       )
                                                  )
11             Complainant,                        )
                                                  )
12        vs.                                      )
                                                  )
13                                                 )
   AMERICAN HOME LOANS (CBSK                      )
14 FINANCIAL GROUP, INC., DBA),                   )
                                                  )
15             Respondent.                          )
                                                  )
16 _____)

17

18           ORDER TO DISCONTINUE RESIDENTIAL MORTGAGE LENDING
                  AND/OR SERVICING ACTIVITIES PURSUANT TO
19               SECTION 50319, CALIFORNIA FINANCIAL CODE

20
   TO:    AMERICAN HOME LOANS
21        (CBSK FINANCIAL GROUP, INC., DBA)
          17991 COWAN
22        IRVINE, CA  92614

23        THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA
24 FINDS THAT:

25        AMERICAN HOME LOANS (CBSK FINANCIAL GROUP, INC., DBA) has failed to
26 comply with the bonding requirements of the California Residential Mortgage Lending Act
27 (California Financial Code Section 50000 et seq.) in that effective October 7, 2007 Bond No.
28 LPM8509492 issued by FIDELITY AND DEPOSIT COMPANY OF MARYLAND in favor of

**Exhibit D**

CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS expired and no replacement bond has been obtained.

Based on the foregoing, Respondent is conducting residential mortgage lending and/or servicing business in violation of Section 50205 of the Financial Code and is conducting business in such an unsafe and injurious manner as to render further operations hazardous to the public or to customers.

NOW, BASED ON THE FOREGOING, AND GOOD CAUSE APPEARING THEREFORE, it is hereby ORDERED, under the provisions of Section 50319 of the California Financial Code, AMERICAN HOME LOANS (CBSK FINANCIAL GROUP, INC., DBA) immediately discontinue the disbursement, in whole or in part, of trust funds held by the licensee and establish a separate trust account for all subsequent trust funds received by the licensee.

THIS ORDER is to remain in full force and effect until further order of the Commissioner.

Section 50319 of the Financial Code provides as follows:

(a) If the commissioner, as a result of any examination or from any report made to him or her, shall find that any person subject to this division is in an insolvent condition, is conducting business in an unsafe or injurious manner that renders further operations hazardous to the public or to customers, has failed to comply with the provision of Section 50317, has permitted its tangible net worth to be lower than the minimum required by law, or has failed to comply with the bonding requirements of Section 50205, the commissioner may, by an order addressed to and served by registered or certified mail, or by personal service on that person, and on any other person having in his or her possession or control any trust funds or other property deposited in escrow with that person, direct discontinuance of the disbursement, in whole or in part, of trust funds held by the licensee and order the establishment of a separate trust account for all subsequent trust funds received by the licensee. No person having in his or her possession any of these funds or documents shall be liable for failure to comply with the order unless he or she has received written notice of the order. Subject to subdivision (b), the order shall remain in effect until set aside by the commissioner, or the person has been adjudged bankrupt.

(b) Within 15 days from the date of an order pursuant to subdivision (a), the person may request a hearing under the Administrative Procedure Act (Chapter 5 (commencing with Section 11500) of Part 2 of Division 3 of Title 2 of the Government Code). Upon receiving a request, the matter shall be set for hearing to commence within 30 days after the receipt unless the person subject to this division consents to a later date. If no hearing is requested within 15 days after the mailing or

--

**Exhibit D**

2

1  service of the notice and none is ordered by the commissioner, the failure to request
2  a hearing shall constitute a waiver of the right to a hearing. Neither the request for a
   hearing nor the hearing itself shall stay the order issued by the commissioner under
3  subdivision (a).

4  DATED:      October 9, 2007
5              Los Angeles, California

6                              Preston DuFauchard
7                              California Corporations Commissioner

8

9                              By _____
                               DiAun M. Burns
10                             Special Administrator
                               California Residential Mortgage Lending Act
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit D**

--

3

1  PRESTON DUFAUCHARD
   CALIFORNIA CORPORATIONS COMMISSIONER
2  WAYNE STRUMPFER
   DEPUTY COMMISSIONER
3  ALAN S. WEINGER (CA BAR NO. 86717)
   SUPERVISING ATTORNEY
4  320 WEST 4ᵗʰ STREET, SUITE 750
   LOS ANGELES, CALIFORNIA 90013-1105
5
6  Attorneys for Complainant
7               BEFORE THE DEPARTMENT OF CORPORATIONS
8                      OF THE STATE OF CALIFORNIA
9
10 In the Matter of the Accusation of        )    File No. 4130306
                                             )
11 THE CALIFORNIA CORPORATIONS               )
   COMMISSIONER,                             )
12                                           )
13            Complainant,                   )
                                             )
14     vs.                                   )
                                             )
15                                           )
                                             )
16                                           )
   AMERICAN HOME LOANS (CBSK                 )
17 FINANCIAL GROUP, INC., DBA),              )
   Respondent                               
18 _____
19
20               ORDER SUMMARILY REVOKING
21     RESIDENTIAL MORTGAGE LENDER AND/OR SERVICER LICENSE
22
23     THE CALIFORNIA CORPORATIONS COMMISSIONER FINDS THAT:
24     GOOD CAUSE APPEARING, the license issued AMERICAN HOME LOANS (CBSK
25 FINANCIAL GROUP, INC., DBA) is hereby revoked for failure to comply with Section 50401 of
26 the California Residential Mortgage Lending Act which requires the payment of an assessment to the
27 Commissioner.
28

**Exhibit E**

1

2    Dated:              November 5, 2007
3    Effective:          December 6, 2007
                         Los Angeles, California
4

5                                        PRESTON DUFAUCHARD
                                         CALIFORNIA CORPORATIONS COMMISSIONER
6

7

8                                        By_____
                                            DIAUN M. BURNS
9                                           Special Administrator
                                            California Residential Mortgage Lending Act
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

--

**Exhibit E**

2

|||||||||||||||||||||||||||||||||||||
**20060803-0003777**

Fee: $38.00
N/C Fee: $0.00

08/03/2006          13:17:17
T20060135797
Requester:
  CHICAGO TITLE

Frances Deane                RMS
Clark County Recorder    Pgs: 26

Apn No:    178-17-811-009

**Title On Document:**

> DEED OF TRUST

**Recording Requested by:**

> CHICAGO TITLE

**Return to:** CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS
17991 COWAN
IRVINE, CALIFORNIA 92614
LOAN NUMBER: 9745878

This page added to provided additional information required by NRS 111.312 Sections 1-2
(Additional recording fee applies)

This cover page must be typed or printed clearly in black ink only

**Exhibit F**

Assessor's Parcel Number: 178-17-811-009

Recording Requested By:
CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS

And When Recorded Return To:
CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS
17991 COWAN
IRVINE, CALIFORNIA 92614
Loan Number: 9745878

Mail Tax Statements To:
ANTONIETA TOVAR-GUZMAN, 1853 INDIAN BEND DRIVE, HENDERSON,
NEVADA 89074
**ESCROW NO.: 13158**
**ORDER NO.: 06100938**

———————————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

**MIN:** 1001446-0009745878-2

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) **"Security Instrument"** means this document, which is dated   JULY 24, 2006           , together
with all Riders to this document.
(B) **"Borrower"** is  ANTONIETA TOVAR-GUZMAN, A SINGLE WOMAN

Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is  CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME
LOANS
Lender is a  CALIFORNIA CORPORATION                                        organized
and existing under the laws of   CALIFORNIA
Lender's address is  17991 COWAN, IRVINE, CALIFORNIA 92614

(D) **"Trustee"** is   CHICAGO TITLE
3980 HOWARD HUGHES PARKWAY, 100, LAS VEGAS, NEVADA 89169

**Exhibit F**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated    JULY 24, 2006    .
The Note states that Borrower owes Lender    SIX HUNDRED EIGHTY THOUSAND AND
00/100                      Dollars (U.S. $    680,000.00      ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
AUGUST 1, 2036                .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider        ☒ Planned Unit Development Rider
☐ Balloon Rider                ☐ Biweekly Payment Rider
☐ 1-4 Family Rider             ☐ Second Home Rider
☐ Condominium Rider            ☒ Other(s) [specify]
                                 INTEREST ONLY RIDER, PREPAYMENT RIDER
                                 TO SECURITY INST

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional

DocMagic ℰℱℴ𝓇𝓂𝓈 800-849-1362
www.docmagic.com

Exhibit F

or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | CLARK | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

```
LINE NINE (9) IN BLOCK 'A' OF LEGACY HIGHLANDS, AS SHOWN BY MAP
THEREOF ON FILE IN BOOK 48 OF PLATS, PAGE 18, AND AMENDED BY
THAT CERTIFICATE OF AMENDMENT RECORDED JANUARY 13, 1995 IN BOOK
950113 AS DOCUMENT NO. 00986, IN THE OFFICE OF THE COUNTY
RECORDER OF CLARK COUNTY, NEVADA.
A.P.N.: 178-17-811-009
```

which currently has the address of          1853 INDIAN BEND DRIVE
                                                    [Street]

HENDERSON                    , Nevada      89074      ("Property Address"):
   [City]                                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges

DocMagic ℰℱℴᵣₘₛ 800-649-1362
www.docmagic.com

Exhibit F

and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in

DocMagic *eFortnus* 800-649-1362
www.docmagic.com

Exhibit F

7028972602

writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                    Page 5 of 15                  DocMagic *EForms* 800-649-1362
www.docmagic.com

**Exhibit F**

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts

**Exhibit F**